KEKER, VAN NEST & PETERS LLP
AJAY S. KRISHNAN - # 222476
akrishnan@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
ERIC B. HANSON - # 254570
ehanson@keker.com
STEPHANIE J. GOLDBERG - # 328710
sgoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff SANDISK CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS LTD.,<br><br>Defendants. | Case No. 5:25-cv-2389<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT**<br><br>Date Filed:  March 7, 2025<br><br>Trial Date:  Not yet set |

Plaintiff Sandisk Corporation ("Sandisk") brings this action for declaratory judgment of patent noninfringement against Defendants IPValue Management, Inc. ("IPValue") and Longitude Flash Memory Solutions Ltd. ("LFMS"), collectively, "Defendants."

## NATURE OF THE ACTION

1.     This is an action arising under the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.  Sandisk brings this action for a declaration that it does not infringe any claim of U.S. Patent Nos. 8,633,537; 9,929,240; 11,456,365; 6,963,505; and 7,671,664, collectively the "Declaratory Judgment Patents."

## PARTIES

2.     Plaintiff Sandisk is a corporation organized in 2025, though originally organized in 1988, existing under the laws of Delaware.  From 2016 until 2025, Sandisk was wholly owned by Western Digital Corporation ("Western Digital"), also a Delaware corporation.  Sandisk Corporation's spin-off from Western Digital Corporation was formally completed on February 24, 2025.  Western Digital continues to operate separately.  Sandisk's principal place of business is at 951 Sandisk Drive, Milpitas, CA 95305.

3.     On information and belief, Defendant IPValue is a corporation organized and existing under the law of Delaware with its principal place of business at 2880 Lakeside Dr., Ste. 320, Santa Clara, CA 95054.

4.     On information and belief, Defendant LFMS is a privately held company, having its principal place of business at Plaza 255 Suite 2A, Blanchardstown Corporate Park 2, Blanchardstown, Dublin 15, D15 YH6H.

## JURISDICTION

5.     This is an action for declaratory relief under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., and the Declaratory Judgment Act, codified at 28 U.S.C. §§ 2201 and 2202.

6.     This Court has personal jurisdiction over IPValue because, on information and belief, IPValue's principal place of business is in Santa Clara, California, which is located in this state and District.  This Court has personal jurisdiction over LFMS at least because LFMS

purposefully directed activity toward this forum and created a substantial connection with California by, for example, filing suit against Western Digital in the United States District Court for the Central District of California on the same Declaratory Judgment Patents at issue here. By participating in that filing, LFMS availed itself of the privileges of conducting activities within California, as well as the benefits and protections of California law. Further, LFMS's threats and lawsuit were directed towards Sandisk and directly relate to Sandisk's activity in the forum, namely designing, marketing, and selling products, including products LFMS has appeared to accuse of infringement in the lawsuit it has brought against Western Digital in the Central District of California. LFMS's participation in the previous lawsuit in California against Western Digital on the same Declaratory Judgment Patents also demonstrates that it would not face an undue burden litigating in this District because it has chosen to participate in a recent lawsuit in this forum.

7.     This Court also has personal jurisdiction over IPValue and LFMS because, on information and belief, they have purposefully directed business activities at this District. For example, LFMS claims it provided IPValue with an exclusive license to the Declaratory Judgment Patents. LFMS also claims it has provided IPValue with the right to assert the Declaratory Judgment Patents. By providing IPValue, which is headquartered in California, with an exclusive license and the right to sue on the Declaratory Judgment Patents, LFMS created continuing obligations in California and directed activities at residents of California, including IPValue, Western Digital, and Sandisk. LFMS's direction of activities to California is also confirmed by the fact that IPValue, as LFMS's exclusive licensee with the right to sue on the Declaratory Judgment Patents, met in person with Western Digital in Santa Clara at IPValue's office to discuss licensing LFMS's patents. On information and belief, LFMS's director of licensing technology staff, Paul Ahern, participated via videoconference in this meeting, as well as subsequent meetings.

8.     IPValue and LFMS also directed activity to the forum because IPValue sent four separate letters to Western Digital, which resides in California. In the first paragraph of each letter sent by IPValue, which also resides in this District, IPValue represented that LFMS owned

or was the exclusive licensee of the Declaratory Judgment Patents, among others.  IPValue went on to explain in these letters that it had acquired from LFMS the exclusive right to license the patents owned or licensable by LFMS.  For each of the four letters sent to Western Digital, IPValue copied Mr. Amit Garag, General Manager of LFMS.

9.      In short, IPValue is a resident of California (and specifically, the Northern District of California), and IPValue and LFMS coordinated to direct activities to this jurisdiction regarding the Declaratory Judgment Patents by collaborating with each other on a licensing campaign where LFMS provided IPValue with an exclusive license to the Declaratory Judgment Patents as well as permission for IPValue to sue on the Declaratory Judgment Patents.  Further, the Defendants jointly sent letters regarding licensing discussions to Western Digital (which is headquartered in California), jointly attempted to license the Declaratory Judgment Patents to Western Digital, including by participating in licensing discussions in California, and ultimately jointly filed suit against Western Digital in California.

10.      This Court has federal question jurisdiction under 28 U.S.C.§§ 1331 and 1338(a) because this is a civil action arising under the Patent Act.  This Court has subject-matter jurisdiction over Sandisk's declaratory judgment claims pursuant to 28 U.S.C. §§ 2201 and 2202 because an immediate and substantial controversy exists between Sandisk and Defendants with respect to whether the Declaratory Judgment Patents cover Sandisk's activities.

## **VENUE**

11.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims at issue occurred in this District and the Defendants are subject to personal jurisdiction within this District.  Alternatively, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(3) because both IPValue and LFMS are subject to personal jurisdiction with respect to this action.

## **DIVISIONAL ASSIGNMENT**

12.      Pursuant to Civil Local Rules 3-5(b) and 3-2(c), and General Order 44, intellectual property actions are assigned on a district-wide basis.

## BACKGROUND

13.    Sandisk began in the late 1980s as a three-person start-up in Silicon Valley; today, it is a multinational corporation with over 4,900 patents and over 5,000 employees.  Sandisk's corporate headquarters in Milpitas houses around 1,800 employees, including all operations for Sandisk, as well as 45 percent of the company's research and development efforts.

14.    Sandisk designs, develops, and manufactures flash memory storage solutions; its products include solid-state drives for computers, memory cards for imaging, computing, mobile, and gaming devices, USB flash drives, and other flash-based memory products.  For more than 35 years, Sandisk has been innovating, researching, designing, developing, and engineering flash memory storage solutions that have transformed and shaped the world.  Sandisk both invented, and is the world's largest manufacturer of, flash storage cards.

15.    On information and belief: Defendants are intellectual property and technology licensing companies.  IPValue markets itself as "monetize[ing] patent portfolios" through its business models.[1]  It has managed more than 60,000 patents purportedly covering "a broad range of technology areas, including semiconductors, networking, telecommunications, computer systems, displays, and consumer electronics."[2]  LFMS's patent portfolio includes approximately 301 active United States patents.  LFMS's patents purportedly "relate primarily to memory technology (both volatile and non-volatile) and are also relevant to other technologies such as: computing architecture, communication and network architecture, processors, microcontrollers, semiconductors, and power management."[3]

16.    Defendants previously sought out Western Digital and attempted to engage in patent licensing discussions with Western Digital.  For example, on at least March 26, 2021, and July 1, 2024, IPValue sent Western Digital (of whom Sandisk was a wholly owned subsidiary at those times) correspondence alleging, collectively, that Western Digital's products infringed the Declaratory Judgment Patents, among others.  The letters list certain Sandisk products as

[1] https://www.ipvalue.com/approach
[2] https://www.ipvalue.com/portfolios
[3] https://www.longitudelicensing.ie/about_us.shtml

2884018

"Representative Infringing Products." The letters also represented that LFMS was the owner or exclusive licensee of the Declaratory Judgment Patents. Each of those letters was directed towards a Western Digital employee in San Jose, California.

17. Western Digital did not license any of Defendants' patents identified in its correspondence, because, on information and belief, Western Digital believed none of its products were covered by Defendants' patents.

18. On January 22, 2025, Defendants brought suit against Western Digital in the United States District Court for the Central District of California, *see* Case No. 8:25-cv-00119, alleging infringement of the five Declaratory Judgment Patents. Sandisk is not a party to that litigation. That complaint alleges infringement of the Declaratory Judgment Patents by Western Digital's "SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof." The alleged infringing aspects of the products, to the extent they can be deduced from Defendants' infringement assertions, appear to be Sandisk technology—not Western Digital technology. For example, in all the presentations that Defendants provided to Western Digital to allegedly demonstrate infringement, Defendants made clear that the accused functionality resides in the dies created by Sandisk. For example, regarding the '664 patent, Defendants accused the Toshiba/SanDisk TP70G7AWV 96-layer 3D NAND Flash Circuit of infringement, which was allegedly used at the time in a Western-Digital-branded product; regarding the '505 patent, Defendants accused the "96L 3D TLC SanDisk die" of infringement, which was allegedly used at the time in a Western-Digital-branded product; regarding the '537 patent, Defendants accused the SanDisk 3D NAND Flash part number 60547 128G of infringement, which was allegedly used at the time in a Western-Digital-branded product; regarding the '240 patent, Defendants for example accused of infringement the SanDisk 3D NAND Flash part number 014129 512G and SanDisk 96 Layer 3D NAND part number HFB1A8MO431A, which were allegedly used at the time in Western-Digital-branded products; and regarding the '365 patent, Defendants accused "SanDisk SD cards including 96 layer or 112 layer 3D NAND Flash memory" of infringement. Further, in their Central District of California suit against Western Digital, Defendants allege infringement of

all Western Digital's "SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the [asserted patents]." These allegations have placed a cloud of infringement over certain of Sandisk's products and, as a result of these allegations, Sandisk believes that a ripe dispute exists between Defendants and Sandisk.

19.    Defendants' failed patent-license negotiations with Western Digital, as well as Defendants' existing lawsuit against Sandisk's former corporate parent, make it highly likely that Defendants will sue Sandisk for patent infringement of the Declaratory Judgment Patents. Because Sandisk contends that it has the right to engage in its business activities without a license from Defendants, there is a substantial, justiciable controversy between Sandisk and Defendants sufficient to warrant a declaratory judgment of the parties' respective rights and duties.

20.    These circumstances also create a threat of actual and imminent injury to Sandisk that can be redressed by judicial relief. The injury to Sandisk includes uncertainty as to whether the development, use, and sale of Sandisk's products will be free from infringement claims based on each of the Declaratory Judgment Patents. Consequently, the injury is sufficiently immediate and irreparable to warrant the issuance of a declaratory judgment.

## **PATENTS**

### **U.S. Patent No. 8,633,537**

21.    U.S. Patent No. 8,633,537 ("the '537 patent) is titled "Memory transistor with multiple charge storing layers and a high work function gate electrode" and states on its face that it was issued to Cypress Semiconductor Corporation on January 21, 2014. Its named inventors are Igor Polishchuk, Sagy Levy, and Krishnaswamy Ramkumar.

22.    On information and belief, the current assignee of the '537 patent is LFMS. On information and belief, LFMS claims to be the current owner by assignment of all right, title, and interest in the '537 patent. On information and belief, IPValue claims to be the exclusive licensee to the '537 patent.

### **U.S. Patent No. 9,929,240**

23.    U.S. Patent No. 9,929,240 ("the '240 patent) is titled "Memory transistor with

multiple charge storing layers and a high work function gate electrode" and states on its face that it was issued to Cypress Semiconductor Corporation on March 27, 2018.  Its named inventors are Igor Polishchuk, Sagy Levy, and Krishnaswamy Ramkumar.

24.    On information and belief, the current assignee of the '240 patent is LFMS.  On information and belief, LFMS claims to be the current owner by assignment of all right, title, and interest in the '240 patent.  On information and belief, IPValue claims to be the exclusive licensee to the '240 patent.

### U.S. Patent No. 11,456,365

25.    U.S. Patent No. 11,456,365 ("the '365 patent) is titled "Memory transistor with multiple charge storing layers and a high work function gate electrode" and states on its face that it was issued to Longitude Flash Memory Solutions Ltd. on September 27, 2022.  Its named inventors are Igor Polishchuk, Sagy Levy, and Krishnaswamy Ramkumar.

26.    On information and belief, the current assignee of the '365 patent is LFMS.  On information and belief, LFMS claims to be the current owner by assignment of all right, title, and interest in the '365 patent.  On information and belief, IPValue claims to be the exclusive licensee to the '365 patent.

### U.S. Patent No. 6,963,505

27.    U.S. Patent No. 6,963,505 ("the '505 patent") is titled "Method Circuit and System For Determining a Reference Voltage" and states on its face that it was issued to Saifun Semiconductors Ltd. on November 8, 2005.  Its named inventor is Guy Cohen.

28.    On information and belief, the current assignees of the '505 patent are Cypress Semiconductor Corporation and Spansion LLC.  On information and belief, IPValue claims to be the exclusive licensee to the '505 patent.

### U.S. Patent No. 7,671,664

29.    U.S. Patent No. 7,671,664 ("the '664 patent") is titled "Charge Pump Control Circuit and Method" and states on its face that it was issued to Cypress Semiconductor Corporation on March 2, 2010.  Its named inventor is Gary Moscaluk.

30.    On information and belief, the current assignee of the '664 patent is LFMS.  On

information and belief, LFMS claims to be the current owner by assignment of all right, title, and interest in the '664 patent. On information and belief, IPValue claims to be the exclusive licensee to the '664 patent.

## CLAIMS FOR RELIEF

### COUNT I

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 8,633,537)

31.     Paragraphs 1–30 are incorporated herein by reference.

32.     Sandisk has not infringed and does not infringe any claim of the '537 patent either directly or indirectly, literally or under the doctrine of equivalents.

33.     For example, and without limitation, the independent claims of the '537 patent (and therefore the dependent claims as well) all recite substantially the same limitation of "an oxide-nitride-nitride-oxide (ONNO) stack disposed about the vertical channel, the ONNO stack comprising . . . a multi-layer charge-trapping region including a first nitride layer comprising an oxygen-rich nitride abutting the tunnel dielectric layer, and a second nitride layer comprising a silicon-rich, oxygen-lean nitride overlying the first nitride layer; and a blocking dielectric layer overlying the multi-layer charge-trapping region." *See, e.g.*, '537 patent, claim 17. No Sandisk product or service meets or embodies this limitation at least because Sandisk's products do not have a multi-layer charge-trapping region with a first nitride layer and a second nitride layer as claimed by the patent.

34.     Thus, and as set forth above, an actual controversy exists between Sandisk on the one hand and Defendants on the other hand with respect to alleged infringement of the '537 patent, and this controversy is likely to continue. Accordingly, a judicial declaration concerning these matters is necessary and appropriate at this time so that Sandisk can ascertain its rights and duties with regard to designing, developing, manufacturing, marketing, and selling its products.

### COUNT II

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 9,929,240)

35.     Paragraphs 1–30 are incorporated herein by reference.

36.     Sandisk has not infringed and does not infringe any claim of the '240 patent either

1  directly or indirectly, literally or under the doctrine of equivalents.

2      37.    For example, and without limitation, the independent claims of the '240 patent

3  (and therefore the dependent claims as well) all recite substantially the same limitation of "a

4  multi-layer charge trapping layer . . . wherein the multi-layer charge trapping layer comprises a

5  first dielectric layer disposed abutting a second dielectric layer, wherein the first dielectric layer

6  includes oxygen-rich nitride and the second dielectric layer includes oxygen-lean nitride." *See,*

7  *e.g.*, '240 patent, claim 12.  No Sandisk product or service meets or embodies this limitation at

8  least because Sandisk's products do not have a multi-layer charge-trapping layer with a first

9  dielectric layer and a second dielectric layer as claimed by the patent.

10     38.    Thus, and as set forth above, an actual controversy exists between Sandisk on the

11  one hand and Defendants on the other hand with respect to alleged infringement of the '240

12  patent, and this controversy is likely to continue.  Accordingly, a judicial declaration concerning

13  these matters is necessary and appropriate at this time so that Sandisk can ascertain its rights and

14  duties with regard to designing, developing, manufacturing, marketing, and selling its products.

15                              **COUNT III**

16     **(Declaratory Judgment of Noninfringement of U.S. Patent No. 11,456,365)**

17     39.    Paragraphs 1–30 are incorporated herein by reference.

18     40.    Sandisk has not infringed and does not infringe any claim of the '365 patent either

19  directly or indirectly, literally or under the doctrine of equivalents.

20     41.    For example, and without limitation, the independent claims of the '365 patent

21  (and therefore the dependent claims as well) all recite substantially the same limitation of "a

22  multi-layer charge storing region surrounding the tunnel dielectric layer, the multi-layer charge

23  storing region formed in a substantially annular shape." *See, e.g.*, '365 patent, claim 35.  No

24  Sandisk product or service meets or embodies this limitation at least because Sandisk's products

25  do not have a multi-layer charge storing region surrounding the tunnel dielectric layer as claimed

26  by the patent.

27     42.    Thus, and as set forth above, an actual controversy exists between Sandisk on the

28  one hand and Defendants on the other hand with respect to alleged infringement of the '365

2884018

patent, and this controversy is likely to continue.  Accordingly, a judicial declaration concerning these matters is necessary and appropriate at this time so that Sandisk can ascertain its rights and duties with regard to designing, developing, manufacturing, marketing, and selling its products.

### COUNT IV

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 6,963,505)

43.    Paragraphs 1–30 are incorporated herein by reference.

44.    Sandisk has not infringed and does not infringe any claim of the '505 patent either directly or indirectly, literally or under the doctrine of equivalents.

45.    For example, and without limitation, claim 1 of the '505 patent (the only independent claim that Defendants identified in its correspondence as one Sandisk allegedly infringes) recites the limitation of "determining a read error rate for each one of said possible reference levels."  No Sandisk product or service meets or embodies this limitation at least because no read error rate is determined for each of the identified possible reference levels.

46.    Thus, and as set forth above, an actual controversy exists between Sandisk on the one hand and Defendants on the other hand with respect to alleged infringement of the '505 patent, and this controversy is likely to continue.  Accordingly, a judicial declaration concerning these matters is necessary and appropriate at this time so that Sandisk can ascertain its rights and duties with regard to designing, developing, manufacturing, marketing, and selling its products.

### COUNT V

### (Declaratory Judgment of Noninfringement of U.S. Patent No. 7,671,664)

47.    Paragraphs 1–30 are incorporated herein by reference.

48.    Sandisk has not infringed and does not infringe any claim of the '664 patent either directly or indirectly, literally or under the doctrine of equivalents.

49.    For example, and without limitation, claim 1 of the '664 patent (the only independent claim that Defendants identified in its correspondence as one Sandisk allegedly infringes) recites the limitation of "based on a dynamic load."  No Sandisk product or service meets or embodies this limitation at least because the "output" of the claimed "clock control circuit" that Defendants identified in their prior correspondence is not identified as the "dynamic

load," and accordingly, the claimed "switch clock control signal" is not "based on" the "dynamic load."

50.    Thus, and as set forth above, an actual controversy exists between Sandisk on the one hand and Defendants on the other hand with respect to alleged infringement of the '664 patent, and this controversy is likely to continue.  Accordingly, a judicial declaration concerning these matters is necessary and appropriate at this time so that Sandisk can ascertain its rights and duties with regard to designing, developing, manufacturing, marketing, and selling its products.

## DEMAND FOR RELIEF

WHEREFORE, Sandisk prays that judgment be entered in its favor and requests:

(1) A judgment and declaration that Sandisk has not infringed and does not infringe in any manner any claim of the Declaratory Judgment Patents, directly, contributorily, or by inducement, and has not otherwise infringed or violated any rights of Defendants and its affiliates, subsidiaries, assigns, employees, or agents, including by Sandisk making, using, offering to sell, or selling the products (or components thereof) that Defendants have listed in their prior infringement assertions, namely the SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof;

(2) A judgment and declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Sandisk to an award of its reasonable attorneys' fees, expenses, and costs in this action;

(3) An award to Sandisk of its costs and reasonable expenses to the fullest extent permitted by law; and

(4) An award of such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Civil Local Rule 3-6(a), Sandisk hereby demands a trial by jury on all issues so triable.

1    Dated:  March 7, 2025                          KEKER, VAN NEST & PETERS LLP

2

3                                         By:    /s/ *Ajay S. Krishnan*
                                                 AJAY S. KRISHNAN
4                                                RYAN K. WONG
                                                 ERIN E. MEYER
5                                                ERIC B. HANSON
                                                 STEPHANIE J. GOLDBERG
6
                                                 Attorneys for Plaintiff SANDISK
7                                                CORPORATION

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT NONINFRINGEMENT
Case No. 5:25-cv-2389

2884018