# Exhibit 1

RUSS, AUGUST & KABAT
Brian D. Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

Attorneys for Plaintiffs
*IPValue Management, Inc. and*
*Longitude Flash Memory Solutions Ltd.*

RUSS, AUGUST & KABAT

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IPVALUE MANAGEMENT, INC., and LONGITUDE FLASH MEMORY SOLUTIONS LTD., <br><br> Plaintiffs, <br><br> vs. <br><br> WESTERN DIGITAL CORPORATION, <br><br> Defendant. | Case No. 8:25-cv-00119 <br><br> **COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **JURY TRIAL DEMANDED** |

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.*, in which Plaintiffs IPValue Management, Inc. ("IPValue") and Longitude Flash Memory Solutions Ltd. ("LFMS," and collectively with IPValue "Plaintiffs") make the following allegations against Defendant Western Digital Corporation ("Defendant" or "Western Digital"):

## INTRODUCTION

1.    This complaint arises from Defendant's unlawful infringement of the following United States patents exclusively licensed as to the claims in this lawsuit by IPValue: U.S. Patent No. 8,633,537 ("'537 Patent"); U.S. Patent No. 9,929,240 ("'240 Patent"); U.S. Patent No. 11,456,365 ("'365 Patent"); U.S. Patent No. 6,963,505 ("'505 Patent"); and U.S. Patent No. 7,671,664 ("'664 Patent") (collectively the "Asserted Patents").

2.    LFMS is an intellectual property and technology licensing company. LFMS's patent portfolio comprises over 472 active and pending patents worldwide, including approximately 301 active United States patents. LFMS acquired these patents and/or rights to assert them from Cypress Semiconductor, a well-known American semiconductor design and manufacturing company that was acquired by Infineon Technologies in 2020 for nearly $10 billion.[1] In some instances, Cypress acquired patent assets from other entities such as Spansion Israel Ltd. through acquisitions. The innovations in these patents have greatly enhanced the capabilities of computer systems, increased electronic device processing power and capabilities and improved the functioning of computer memory and storage devices.

3.    IPValue is a leader in intellectual property and technology licensing whose mission is to fuel innovation by working with leading technology enterprises to generate revenues from their IP portfolios. LFMS has provided IPValue with an

---

[1] *See* "Infineon snaps up San Jose's Cypress Semiconductor in $10B deal", *available at* https://www.bizjournals.com/sanjose/news/2019/06/03/infineon-snaps-up-san-jose-s-cypress-semiconductor.html.

RUSS, AUGUST & KABAT

exclusive license to the Asserted Patents and the right to assert these patents against Defendant.

4.     Western Digital has infringed and continues to infringe Plaintiffs' patents. Moreover, despite Plaintiffs notifying Western Digital of infringement, Western Digital has thus far refused to license those patents. Instead, it has continued to make, use, sell, offer to sell, and/or import Plaintiffs' intellectual property within the United States without Plaintiffs' permission. IPValue attempted to engage in licensing discussions with Western Digital for some time before initiating this action.  For example, a letter from IPValue to Western Digital dated March 26, 2021, informed Western Digital that its products containing 3D NAND Flash memory infringed numerous patents, including the '537 Patent, the '240 Patent, '505 Patent, and the '664 Patent. A further letter from IPValue to Western Digital dated February 10, 2023, informed Western Digital that its products containing 3D NAND Flash memory infringed additional patents, including the '365 Patent. IPValue had multiple meetings with Western Digital in 2022, 2023, and 2024 where it presented detailed evidence demonstrating that Western Digital's products infringed each of the Asserted Patents.  Nonetheless, Western Digital refused to take a license to these valuable patents.  Unable to move forward with licensing discussions, IPValue had no other choice but to file this lawsuit.

## PARTIES

5.     IPValue is a Delaware corporation, having its principal place of business at 2880 Lakeside Dr., Ste. 320, Santa Clara, CA 95054.

6.     LFMS is a privately held company, having its principal place of business at Plaza 255 Suite 2A, Blanchardstown Corporate Park 2, Blanchardstown, Dublin 15, D15 YH6H.

7.     Western Digital is a Delaware corporation with a principal place of business at 5601 Great Oaks Parkway, San Jose, California, 95119. Western Digital, on information and belief, designs and manufactures, among other things, solid state

RUSS, AUGUST & KABAT

2

drives ("SSD"), hard drives ("HDD"), USB Flash Drives, Embedded Flash, Memory Cards, and other non-volatile memory-based storage. Western Digital may be served with process through its registered agent, the Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9.      This Court has personal jurisdiction over Defendant in this action because Defendant has committed acts within this District giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice. Defendant, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, importing, offering to sell, and selling products that infringe the asserted patents.

10.      Venue is proper in this District under 28 U.S.C. § 1400(b). Upon information and belief, Defendant has transacted business in this District and has committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and importing products that infringe the asserted patents. Defendant has at least one regular and established place of business in the District. For example, Western Digital has offices at 3355 Michelson Dr., Irvine, CA, 92612.

## DEFENDANT'S PRE-SUIT KNOWLEDGE OF
## ITS INFRINGEMENT OF PLAINTIFFS' PATENTS

11.      Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

12.      Before filing this action, LFMS, through its agent IPValue, notified

RUSS, AUGUST & KABAT

3

Defendant about the Asserted Patents and its infringement thereof. Among other things, IPValue identified the Asserted Patents to Western Digital in multiple communications from 2021–2024; alleged that Western Digital infringed the Asserted Patents, including identifying exemplary infringing products; sought to engage Western Digital in discussions regarding its use of Plaintiffs' intellectual property (including the Asserted Patents); and offered to license the Asserted Patents to Western Digital.

13.    For example, on March 26, 2021, IPValue sent a letter to Western Digital, notifying Western Digital of its infringement of certain of Plaintiffs' patents, including the '537 Patent, the '240 Patent, '505 Patent, and the '664 Patent. On February 10, 2023, IPValue sent a further letter to Western Digital, notifying Western Digital of its infringement of additional patents of Plaintiffs, including the '365 Patent. In each letter, IPValue specifically identified Western Digital's products using 3D NAND Flash memory as exemplary infringing products.

14.    IPValue also conducted multiple in-person and video meetings with Western Digital about licensing Plaintiffs' patents, including on May 24, 2022, August 24–25, 2022, November 17, 2022, February 8, 2023, June 21, 2023, September 26–27, 2023, and November 1, 2023. During the August 24–25, 2022, meetings, IPValue provided Western Digital with detailed evidence that its products infringe the '537 Patent, the '240 Patent, the '505 Patent, and the '664 Patent. During the November 1, 2023 meeting, IPValue provided Western Digital with detailed evidence that its products infringe the '365 Patent.

15.    Despite Plaintiffs' repeated efforts, which have continued for nearly four years, Western Digital has refused to license the Asserted Patents and has also not taken steps to end its infringement of the Asserted Patents. Instead, Western Digital continues to knowingly, intentionally, and willfully infringe Plaintiffs' patents directly, contributorily, and by inducement, to obtain their significant benefits without a license from Plaintiffs.

4

RUSS, AUGUST & KABAT

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 8,633,537

16.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

17.     LFMS is the owner and assignee of United States Patent No. 8,633,537 titled "Memory transistor with multiple charge storing layers and a high work function gate electrode." IPValue has the exclusive right to license the '537 Patent to Western Digital and possesses substantial rights including the right to enforce the patent against Defendant. The '537 Patent was duly and legally issued by the United States Patent and Trademark Office on January 21, 2014. A true and correct copy of the '537 Patent is attached as Exhibit 1.

18.     Defendant has known of the '537 Patent and its infringement of that patent since at least as early as March 26, 2021.

19.     Defendant, knowing its products infringe the '537 Patent and with the specific intent for others to infringe the '537 Patent, has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '537 patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '537 Patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '537 Patent ("Accused Products").

20.     Defendant has also infringed, and continues to infringe, claims of the '537 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the

5

invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '537 Patent, in violation of 35 U.S.C. § 271(c).

21.     Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendant with pre-suit notice of infringement of the '537 Patent no later than March 26, 2021.

22.     Plaintiffs have sustained and are entitled to recover damages as a result of Defendant's infringement.

23.     As described above, Defendant's infringement of the '537 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Defendant and therefore the latest possible date on which Defendant knew of the '537 Patent and that its conduct constituted and resulted in infringement of the '537 Patent. IPValue again identified the '537 patent and Defendant's infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendant nonetheless has committed acts of direct and indirect infringement despite knowing that its actions constituted infringement of the valid and enforceable '537 patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendant, and/or even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendant's conduct in light of these circumstances is egregious. Defendant's knowing, deliberate, and willful infringement of the '537 patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

24.     The Accused Products satisfy all claim limitations of one or more claims of the '537 Patent. For example, the Accused Products infringe claim 17 of

the '537 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

25.    The Accused Products include "a semiconductor device" comprising "a memory transistor." For example,



26.    In the Accused Products, the memory transistor includes "a vertical channel comprising polysilicon extending from a first diffusion region formed on a surface on a substrate to a second diffusion region formed over the surface of the substrate, the vertical channel electrically connecting the first diffusion region to the second diffusion region." For example,





27.    In the Accused Products, the memory transistor includes "an oxide-nitride-nitride-oxide (ONNO) stack disposed about the vertical channel." For example,



28.    In the Accused Products, the ONNO stack includes "a tunnel dielectric layer abutting the vertical channel." For example,



29.     In the Accused Products, the ONNO stack includes "a multi-layer charge-trapping region including a first nitride layer comprising an oxygen-rich nitride abutting the tunnel dielectric layer, and a second nitride layer comprising a silicon-rich, oxygen-lean nitride overlying the first nitride layer." For example,

RUSS, AUGUST & KABAT



30.     In the Accused Products, the ONNO stack includes "a blocking dielectric layer overlying the multi-layer charge-trapping region." For example,

31.     In the Accused Products, the memory transistor includes "a high work

10

RUSS, AUGUST & KABAT

function gate electrode disposed about the ONONO stack, abutting the blocking dielectric layer." For example,



## COUNT II

## INFRINGEMENT OF U.S. PATENT NO. 9,929,240

32.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

33.     LFMS is the owner and assignee of United States Patent No. 9,929,240 titled "Memory transistor with multiple charge storing layers and a high work function gate electrode." IPValue has the exclusive right to license the '240 Patent to Western Digital and possesses substantial rights including the right to enforce the patent against Defendant. The '240 Patent was duly and legally issued by the United States Patent and Trademark Office on March 27, 2018. A true and correct copy of the '240 Patent is attached as Exhibit 2.

34.     Defendant has known of the '240 Patent and its infringement of that patent since at least as early as March 26, 2021.

35.     Defendant, knowing its products infringe the '240 Patent and with the specific intent for others to infringe the '240 Patent, has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '240 patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the

doctrine of equivalents, one or more claims of the '240 Patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '240 Patent ("Accused Products").

36. Defendant has also infringed, and continues to infringe, claims of the '240 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '240 Patent, in violation of 35 U.S.C. § 271(c).

37. Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendant with pre-suit notice of infringement of the '240 Patent no later than March 26, 2021.

38. Plaintiffs have sustained and are entitled to recover damages as a result of Defendant's infringement.

39. As described above, Defendant's infringement of the '240 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Defendant and therefore the latest possible date on which Defendant knew of the '240 Patent and that its conduct constituted and resulted in infringement of the '240 Patent. IPValue again identified the '240 patent and Defendant's infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendant nonetheless has committed acts of direct and indirect infringement despite knowing that its actions constituted

infringement of the valid and enforceable '240 patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendant, and/or even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendant's conduct in light of these circumstances is egregious. Defendant's knowing, deliberate, and willful infringement of the '240 patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

40.   The Accused Products satisfy all claim limitations of one or more claims of the '240 Patent. For example, the Accused Products infringe claim 12 of the '240 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

41.   The Accused Products include "a semiconductor device" comprising "a memory device." For example,



42.   In the Accused Products, the memory device includes "a gate structure including a first high work function gate electrode." For example,



43.     In the Accused Products, the memory device includes "a channel positioned between and electrically connecting a first diffusion region and a second diffusion region, wherein the channel is vertical and oriented substantially perpendicular to a semiconductor material structure." For example,







44.     In the Accused Products, the memory device includes "a tunnel dielectric layer, a multi-layer charge trapping layer, and a blocking dielectric layer disposed between the gate structure and the channel, wherein the multi-layer charge trapping layer comprises a first dielectric layer disposed abutting a second dielectric layer, wherein the first dielectric layer includes oxygen-rich nitride and the second dielectric layer includes oxygen-lean nitride." For example,



45.     In the Accused Products, the memory device includes "a metal oxide semiconductor (MOS) logic device including a gate oxide layer and a second high work function gate electrode disposed thereon." For example,

RUSS, AUGUST & KABAT



## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 11,456,365

46.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

47.     LFMS is the owner and assignee of United States Patent No. 11,456,365 titled "Memory transistor with multiple charge storing layers and a high work function gate electrode." IPValue has the exclusive right to license the '365 Patent to Western Digital and possesses substantial rights including the right to enforce the patent against Defendant. The '365 Patent was duly and legally issued by the United States Patent and Trademark Office on September 27, 2022. A true and correct copy of the '365 Patent is attached as Exhibit 3.

48.     Defendant has known of the '365 Patent and its infringement of that patent since at least as early as February 10, 2023.

49.     Defendant, knowing its products infringe the '365 Patent and with the specific intent for others to infringe the '365 Patent, has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '365 patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe and/or were made by a patented process, literally and/or under the doctrine of equivalents, one or more claims of the '365 Patent, and continues to do so. By way of illustrative example,

16

these infringing products and services include, without limitation, Defendant's SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '365 Patent ("Accused Products").

50.    Defendant has also infringed, and continues to infringe, claims of the '365 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '365 Patent, in violation of 35 U.S.C. § 271(c).

51.    Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendant with pre-suit notice of infringement of the '365 Patent no later than February 10, 2023.

52.    Plaintiffs have sustained and are entitled to recover damages as a result of Defendant's infringement.

53.    As described above, Defendant's infringement of the '365 Patent has been knowing, deliberate, and willful, since at least as early as February 10, 2023, the date of IPValue's first letter to Defendant and therefore the latest possible date on which Defendant knew of the '365 Patent and that its conduct constituted and resulted in infringement of the '365 Patent. IPValue again identified the '365 patent and Defendant's infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendant nonetheless has committed acts of direct and indirect infringement despite knowing that its actions constituted infringement of the valid and enforceable '365 patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendant, and/or

even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendant's conduct in light of these circumstances is egregious. Defendant's knowing, deliberate, and willful infringement of the '365 patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

54.    The Accused Products satisfy all claim limitations of one or more claims of the '365 Patent. For example, the Accused Products infringe claim 35 of the '365 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

55.    The Accused Products include a "semiconductor memory device" that includes "a semiconductor substrate." For example,



56.    In the Accused Products, the semiconductor memory device includes "a channel region oriented substantially perpendicular to the semiconductor substrate, the channel region formed in a substantially annular shape." For example,



57.   In the Accused Products, the semiconductor memory device includes "a tunnel dielectric layer surrounding the channel region, the tunnel dielectric layer formed in a substantially annular shape." For example,



58.     In the Accused Products, the semiconductor memory device includes "a multi-layer charge storing region surrounding the tunnel dielectric layer, the multi-layer charge storing region formed in a substantially annular shape." For example,



59.     In the Accused Products, the semiconductor memory device includes "a blocking dielectric layer surrounding the multi-layer charge storing region, the blocking dielectric layer formed in a substantially annular shape." For example,



60.     In the Accused Products, the semiconductor memory device includes "a gate electrode surrounding the blocking dielectric layer." For example,



## COUNT IV

## INFRINGEMENT OF U.S. PATENT NO. 6,963,505

61.     Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

62.     IPValue has the exclusive right to license United States Patent No. 6,963,505 titled "Method circuit and system for determining a reference voltage" to

Defendant and possesses substantial rights including the right to enforce the patent against Defendant. The '505 Patent was duly and legally issued by the United States Patent and Trademark Office on November 8, 2005. A true and correct copy of the '505 Patent is attached as Exhibit 4.

63. Defendant has known of the '505 Patent and its infringement of that patent since at least as early as March 26, 2021.

64. Defendant, knowing its products infringe the '505 Patent and with the specific intent for others to infringe the '505 Patent, has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '505 patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '505 Patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '537 Patent ("Accused Products").

65. Defendant has also infringed, and continues to infringe, claims of the '505 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '505 Patent, in violation of 35 U.S.C. § 271(c).

66. Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendant with pre-suit notice of infringement of the '505 Patent

RUSS, AUGUST & KABAT

no later than March 26, 2021.

67.     Plaintiffs have sustained and are entitled to recover damages as a result of Defendant's infringement.

68.     As described above, Defendant's infringement of the '505 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Defendant and therefore the latest possible date on which Defendant knew of the '505 Patent and that its conduct constituted and resulted in infringement of the '505 Patent. IPValue again identified the '505 patent and Defendant's infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendant nonetheless has committed acts of direct and indirect infringement despite knowing that its actions constituted infringement of the valid and enforceable '505 patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendant, and/or even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendant's conduct in light of these circumstances is egregious. Defendant's knowing, deliberate, and willful infringement of the '505 patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

69.     The Accused Products satisfy all claim limitations of one or more claims of the '505 Patent. For example, the Accused Products infringe claim 1 of the '505 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

70.     The Accused Products practice a "method of selecting a reference level from a set of possible reference levels," which includes "using each of said possible reference levels to read a set of cells from a memory area." For example,





Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

71.     In the Accused Products, the method includes "determining a read error rate for each one of said possible reference levels associated with the reading of said set of cells." For example,



Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

RUSS, AUGUST & KABAT

72. In the Accused Products, the method includes "selecting a reference level from said set of possible reference levels whose read error rate is relatively low." For example,



Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

## COUNT V

## INFRINGEMENT OF U.S. PATENT NO. 7,671,664

73. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as if fully set forth herein.

74. LFMS is the owner and assignee of United States Patent No. 7,671,664 titled "Charge pump control circuit and method." IPValue has the exclusive right to license the '664 Patent to Western Digital and possesses substantial rights including the right to enforce the patent against Defendant. The '664 Patent was duly and legally issued by the United States Patent and Trademark Office on March 2, 2010. A true and correct copy of the '664 Patent is attached as Exhibit 5.

75. Defendant has known of the '664 Patent and its infringement of that patent since at least as early as March 26, 2021.

RUSS, AUGUST & KABAT

76.     Defendant, knowing its products infringe the '664 Patent and with the specific intent for others to infringe the '664 Patent, has directly infringed (literally and equivalently) and induced and contributed to infringement by others of the '664 patent by making, using, offering for sale, selling, and/or importing into the United States certain products and services that directly infringe, literally and/or under the doctrine of equivalents, one or more claims of the '664 Patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendant's SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof since the issuance of the '664 Patent ("Accused Products").

77.     Defendant has also infringed, and continues to infringe, claims of the '664 patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Products, which are used in practicing the process, or using the systems, of the patent, and constitute a material part of the invention. Defendant knows the components in the Accused Products to be especially made or especially adapted for use in infringement of the patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. Accordingly, Defendant has been, and currently is, contributorily infringing the '664 patent, in violation of 35 U.S.C. § 271(c).

78.     Plaintiffs have complied with 35 U.S.C. § 287. At a minimum, Plaintiffs provided Defendant with pre-suit notice of infringement of the '664 Patent no later than March 26, 2021.

79.     Plaintiffs have sustained and are entitled to recover damages as a result of Defendant's infringement.

80.     As described above, Defendant's infringement of the '664 Patent has been knowing, deliberate, and willful, since at least as early as March 26, 2021, the date of IPValue's first letter to Defendant and therefore the latest possible date on

which Defendant knew of the '664 Patent and that its conduct constituted and resulted in infringement of the '664 Patent. IPValue again identified the '664 patent and Defendant's infringement thereof several times thereafter, as described above, and also including through this Complaint. Defendant nonetheless has committed acts of direct and indirect infringement despite knowing that its actions constituted infringement of the valid and enforceable '664 patent, despite a risk of infringement that was known or so obvious that it should have been known to Defendant, and/or even though Defendant otherwise knew or should have known that its actions constituted an unjustifiably high risk of infringement of that valid and enforceable patent. Defendant's conduct in light of these circumstances is egregious. Defendant's knowing, deliberate, and willful infringement of the '664 patent entitles Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

81.    The Accused Products satisfy all claim limitations of one or more claims of the '664 Patent. For example, the Accused Products infringe claim 1 of the '664 Patent. One, non-limiting, example of the Accused Products infringement is presented below.

82.    The Accused Products include "a charge pump control circuit" that includes "a clock control circuit configured to output a switch clock control signal based on a dynamic load." For example,







(Source: TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis)

83.    In the Accused Products, the charge pump control circuit includes "a clock driver circuit configured to switch a clock signal supplied to a charge pump circuit between one of a first clock signal and a second clock signal based on the switch clock control signal, wherein the first clock signal has a higher frequency than the second clock signal." For example,





(Source: TechInsight Report Toshiba/Sandisk 96L 3D NAND Flash Circuit Analysis)

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter:

a.      A judgment in favor of Plaintiffs that Defendant has infringed, either literally and/or under the doctrine of equivalents, the '537 Patent, the '240 Patent, the '365 Patent, the '505 Patent, and the '664 Patent;

b.      A judgment and order requiring Defendant to pay Plaintiffs their

damages, costs, expenses, and pre-judgment and post-judgment interest for Defendant's infringement of the '537 Patent, the '240 Patent, the '365 Patent, the '505 Patent, and the '664 Patent;

      c.    A judgment and order requiring Defendant to provide an accounting and to pay supplemental damages to Plaintiffs, including without limitation, pre-judgment and post-judgment interest;

      d.    A judgement that Defendant's infringement is willful and enhanced damages and fees as a result of that willfulness under 35 U.S.C. § 284;

      e.    A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiffs their reasonable attorneys' fees against Defendant; and

      f.    Any and all other relief as the Court may deem appropriate and just under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED:  January 22, 2025

Respectfully submitted,
*/s/ Brian D. Ledahl*
Brian D. Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiffs*
*IPValue Management, Inc. and*
*Longitude Flash Memory Solutions Ltd.*

RUSS, AUGUST & KABAT