KEKER, VAN NEST & PETERS LLP
AJAY S. KRISHNAN - # 222476
akrishnan@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
ERIC HANSON - # 254570
ehanson@keker.com
STEPHANIE J. GOLDBERG - # 328710
sgoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff SANDISK CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK CORPORATION,<br><br>    Plaintiff,<br><br>    v.<br><br>IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS, LTD.,<br><br>    Defendants. | Case No. 5:25-CV-02389-PCP<br><br>**PLAINTIFF'S NOTICE OF DECISION ON MOTION TO STAY IN C.D. CAL. LITIGATION**<br><br>Date Filed:  March 7, 2025<br><br>Trial Date:  Not Set |

## NOTICE OF DECISION ON MOTION TO STAY

Plaintiff Sandisk Corporation ("Sandisk") submits this Notice to inform the Court that the Central District of California trial court has granted Sandisk's and Western Digital Corporation's Motion to Stay in *IPValue Management, Inc. and Longitude Flash Memory Solutions, Ltd. v. Western Digital Corporation and Sandisk Corporation*, Case No. 8:25-cv-001119-MWF (DFMx) (C.D. Cal.). A copy of the trial court's decision is attached as **Exhibit A** ("Order").

In granting the motion to stay, the C.D. Cal. court stated: "Although this action was the first-filed, Defendants have demonstrated convincing reasons for application of the 'convenience' exception to the first-to-file rule." Order at 1. The C.D. Cal. litigation is now "stayed pending resolution of the DJ Action" (*i.e.*, this litigation). *Id.* at 14.

The C.D. Cal. court's decision is relevant to Defendants' pending Motion to Dismiss, Transfer, or Stay Under the First-to-File Rule. ECF No. 25 ("Motion"). Specifically, Defendants' Motion argues that the parties' venue dispute and convenience arguments under the first-to-file rule should be resolved by the first-filed court (*i.e.*, the C.D. Cal. court), and not this Court. *See id.* at 8. The C.D. Cal. court has now resolved the parties' venue dispute under the first-to-file rule in favor of the Northern District of California.

The Parties met and conferred on July 7, 2025 to discuss the Order and the pending Motion. Defendants have agreed to withdraw their Motion (ECF No. 25) and the Parties will be filing a stipulation that withdraws the Motion that sets an Answer deadline shortly.

Dated: July 9, 2025

KEKER, VAN NEST & PETERS LLP

By: *s/Ryan K. Wong*
AJAY S. KRISHNAN
RYAN K. WONG
ERIN E. MEYER
ERIC HANSON
STEPHANIE J. GOLDBERG

Attorneys for Plaintiff SANDISK CORPORATION

# EXHIBIT A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| **Case No.** | CV 25-00119-MWF (DFMx) | **Date:** July 2, 2025 |
| **Title:** | IPValue Management, Inc. et al. v. Western Digital Corp. et al. | |

**Present:** The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

Deputy Clerk:
Rita Sanchez

Court Reporter:
Not Reported

Attorneys Present for Plaintiffs:
None Present

Attorneys Present for Defendants:
None Present

**Proceedings (In Chambers):** ORDER GRANTING DEFENDANTS' MOTION TO STAY AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION TO DISMISS [30] [32] [33]

Before the Court are two Motions.

- Defendants Western Digital Corporation and Sandisk Corporation filed a Motion to Dismiss on May 7, 2025. (Docket No. 30). Defendants filed a corrected version on May 8, 2025. (Docket No. 33). Plaintiffs IPValue Management, Inc. ("IPValue") and Longitude Flash Memory Solutions Ltd. ("LFMS") filed an Opposition on June 9, 2025. (Docket No. 37). Defendants filed a Reply on June 16, 2025. (Docket No. 39).

- Defendants filed a Motion to Stay, also on May 7, 2025. (Docket No. 32). Plaintiffs filed an Opposition on June 9, 2025. (Docket No. 36). Defendants filed a Reply on June 16, 2025. (Docket No. 38).

The Court has read and considered the Motions and held a hearing on **June 30, 2025**.

The Motion to Stay is **GRANTED**. Although this action was the first-filed, Defendants have demonstrated convincing reasons for application of the "convenience" exception to the first-to-file rule. The Motion to Dismiss is therefore **DENIED** *without prejudice*.

---

**CIVIL MINUTES—GENERAL** 1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)           Date:  July 2, 2025
Title:  IPValue Management, Inc. et al. v. Western Digital Corp. et al.

## I. BACKGROUND

Plaintiffs commenced this action on January 22, 2025. (Complaint (Docket No. 1)). Plaintiffs filed their First Amended Complaint ("FAC") on April 9, 2025. (FAC (Docket No. 24)). The Court summarizes the allegations in the FAC in the light most favorable to Plaintiff as follows:

IPValue and LFMS are non-practicing, patent-licensing entities based in Northern California and Ireland, respectively. (*See* FAC ¶¶ 2-3, 5-6). Western Digital is a corporation that produces various computer data storage devices. (*Id.* ¶ 7). It acquired Sandisk—a subsidiary producing similar products—in 2016, but the latter became an independent entity on February 21, 2025. (*Id.* ¶¶ 8, 72). While it was a subsidiary of Western Digital, Sandisk produced flash memory products under Western Digital's brand, and when they separated, Sandisk agreed to assume liability for any flash memory product released before separation. (Declaration of Karin Werder (Docket No. 32-1) ¶¶ 4-7; Declaration of Anne Koh ("Koh Dec.") (Docket No. 32-2) ¶¶ 3-7).

Plaintiffs allege infringement of U.S. Patent No. 8,633,537 (the "'537 Patent"); U.S. Patent No. 9,929,240 (the "'240 Patent"); U.S. Patent No. 11,456,365 (the "'365 Patent") (collectively, the "Polishchuk Patents"); U.S. Patent No. 6,963,505 (the "'505 Patent"); and U.S. Patent No. 7,671,664 (the "'664 Patent"). (*See generally* FAC). Generally, the Polishchuk Patents are patents to memory transistors with a special multilayer structure that traps electrical charge. (Motion to Dismiss at 3).

For each asserted patent, Plaintiffs allege that Defendants knowingly infringed by manufacturing, selling, offering for sale, and importing infringing products such as solid state drives (SSDs), OptiNAND hard disk drives (HDDs), USB flash drives, embedded flash, and memory cards with 3D NAND flash memory (the "accused products"). (FAC ¶¶ 21, 37, 51, 66, 82). Plaintiffs also claim that, for each patent, Defendants have induced and contributed to infringement by others by providing components specially made for infringement, which are not staple articles and have no substantial non-infringing use. (*Id.* ¶¶ 22, 38, 52, 67, 83).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 25-00119-MWF (DFMx)  Date: July 2, 2025
Title: IPValue Management, Inc. et al. v. Western Digital Corp. et al.

      The '537 Patent was issued on January 21, 2014. (*Id.* ¶ 19). Plaintiffs allege that LFMS is the owner and assignee of this patent, and that IPValue holds exclusive rights to license and enforce it. (*Id.*). The '537 Patent describes a semiconductor device that includes a memory transistor with the following components: (1) a vertical polysilicon channel that connects two diffusion regions; (2) an ONNO (oxide-nitride-nitride-oxide) stack around the channel; (3) a tunnel dielectric layer; (4) a multi-layer charge-trapping region composed of an oxygen-rich nitride layer and a silicon-rich, oxygen-lean nitride layer; a blocking dielectric layer above that; and (5) a high work function gate electrode. (*Id.* ¶¶ 27-33). Plaintiffs allege that the accused products contain these patented components. (*Id.* ¶ 26).

      The '240 Patent was issued on March 27, 2018. (*Id.* ¶ 35). Plaintiffs allege that LFMS is the owner and assignee of this patent, and that IPValue holds exclusive rights to license and enforce it. (*Id.*). The '240 Patent describes a semiconductor device with a memory device that features: (1) a gate structure with a high work function gate electrode; (2) a vertical channel electrically connecting two diffusion regions; a tunnel dielectric layer, a multi-layer charge-trapping layer composed of oxygen-rich and oxygen-lean nitride layers; (3) a blocking dielectric layer; and (4) a metal oxide semiconductor (MOS) logic device that includes a gate oxide layer and a second high work function gate electrode. (*Id.* ¶¶ 43-47). Plaintiffs allege that the accused products contain these patented components. (*Id.* ¶ 42).

      The '365 Patent was issued on September 27, 2022. (*Id.* ¶ 49). Plaintiffs allege that LFMS is the owner and assignee of this patent, and that IPValue holds exclusive rights to license and enforce it. (*Id.*). The '365 Patent describes a semiconductor memory device with (1) a semiconductor substrate; (2) a channel region oriented substantially perpendicular to the substrate and formed in a substantially annular shape; (3) a tunnel dielectric layer surrounding the channel; (4) a multi-layer charge storing region surrounding the tunnel dielectric layer; (5) a blocking dielectric layer surrounding the charge storing region; and (6) a gate electrode surrounding the blocking dielectric layer. (*Id.* ¶¶ 57-62). Plaintiffs allege that the accused products contain these patented components. (*Id.* ¶ 56).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 25-00119-MWF (DFMx)            Date: July 2, 2025
Title:     IPValue Management, Inc. et al. v. Western Digital Corp. et al.

       The '505 Patent was issued on November 8, 2005. (*Id.* ¶ 64). Plaintiffs allege that IPValue holds exclusive rights to license and enforce this patent. (*Id.*). Plaintiffs contend that some accused products utilize the patented method of selecting a reference voltage by (1) using each of several possible reference voltages to read memory cells; (2) determining read error rates associated with each voltage; and (3) selecting the voltage with the lowest or relatively low error rate. (*Id.* ¶¶ 71, 74, 76, 77, 78). Plaintiffs cite as evidence a 2018 International Solid-State Circuits Conference (ISSCC) paper co-authored by engineers from a Toshiba/Sandisk joint venture, which describes relevant technology used in 96-layer (96L) and 112-layer (112L) 3D NAND flash memory. (*Id.* ¶¶ 73, 75). Plaintiffs also allege that Western Digital never disputed the paper's relevance to their products. (*Id.* ¶ 75).

       The '664 Patent was issued on March 2, 2010. (*Id.* ¶ 80). Plaintiffs allege that LFMS is the owner and assignee of this patent, and that IPValue holds exclusive rights to license and enforce it. (*Id.*). The '664 Patent describes (1) a charge pump control circuit with a clock control circuit configured to output a switch clock control signal based on a dynamic load; and (2) a clock driver circuit that switches the clock signal between a first, higher-frequency signal and a second, lower-frequency signal based on that control signal. (*Id.* ¶¶ 88-89). Plaintiffs allege that the accused products contain these patented components. (*Id.* ¶ 87). To support these claims, Plaintiffs cite findings from a TechInsights circuit analysis report on Toshiba/Sandisk 96L 3D NAND Flash, which allegedly shows the presence of such circuitry. (*Id.* ¶ 88-89). For example, the report identifies component B4093, which functions as a dynamic load control element and enables switching behavior consistent with the patent claims. (*Id.* ¶ 88).

       As mentioned above, Plaintiffs commenced the action by filing the Complaint on January 22, 2025. (Docket No. 1). The initial Complaint named only Western Digital as a Defendant, because Sandisk was not an independent entity at that time. (*Id.*). Western Digital spun off Sandisk on February 21, 2025. (Motion to Stay at 3-4). On March 7, 2025, Sandisk filed a declaratory judgment action (the "DJ Action") against Plaintiffs in the Northern District of California, seeking a declaration of non-infringement of the five patents at issue in this action. (*Id.* at 5; *see also Sandisk Corp. v. IPValue Mgmt., Inc.*, No. 5:25-cv-02839-PCP (N.D. Cal.)). On April 9, 2025,

STAY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | |
|---|---|---|
| Case No. | CV 25-00119-MWF (DFMx) | Date: July 2, 2025 |
| Title: | IPValue Management, Inc. et al. v. Western Digital Corp. et al. | |

Plaintiffs amended the Complaint to add Sandisk as a Defendant. (*See generally* FAC).

Defendants seek to stay this action until resolution of the DJ Action. Defendants argue that the DJ Action will streamline the issues here by determining whether infringement occurred, that the Northern District is a more convenient venue, that a stay will prevent conflicting decisions, that the equities favor a stay, and that the customer-suit exception favors a stay as to Western Digital. (*See generally* Motion to Stay).

Defendants also move to dismiss the FAC on the basis that Plaintiffs' infringement allegations are either "unexplained or conclusory." (Motion to Dismiss at 1). Defendants argue that the FAC merely supplements the Complaint with additional conclusory allegations that (1) "on information and belief," the article describes certain categories of Defendants' products, and (2) that Western Digital never denied that the article accurately described techniques used in its products. (*Id.* at 2).

## II. LEGAL STANDARD

"A district court's discretion to stay proceedings 'is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Hanover Ins. Co. v. Mason Mcduffie Real Estate, Inc.*, No. 16-cv-01114-JST, 2016 WL 7230868, at *1 (N.D. Cal. Dec. 14, 2016) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "Whether to stay proceedings is entrusted to the discretion of the district court." *Id.* (citing *Landis*, 299 U.S. at 254-55).

Under *Landis*, in deciding whether to stay proceedings pending resolution of another action, courts must weigh various competing interests, including (1) the possible damage that may result from the granting of a stay; (2) the hardship a party may suffer if the case is allowed to go forward; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). When weighing the parties' competing interests, the Court

Case 8:25-cv-00119-MWF-DFM Document 36 Filed 07/02/25 Page 6 of 14 Page ID #:776

STAY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)           Date: July 2, 2025
Title:  IPValue Management, Inc. et al. v. Western Digital Corp. et al.

must be mindful that, "if there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else," then the movant "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

## III. DISCUSSION

The Court first reaches the Motion to Stay, as granting that Motion would mean not reaching the Motion to Dismiss.

Defendants first argue that this action should be stayed because the DJ Action will resolve the primary issues in this action. The DJ Action similarly concerns whether Defendants infringed Plaintiffs' patents; accordingly, the Court has no doubt that the DJ Action would indeed resolve the most important issues in this action. The Court also does not doubt Defendants' argument that a stay would prevent conflicting decisions from two district courts. Of course, however, neither of these justifications for a stay are ***unique*** to staying this action. That is, they would apply with equal force to an argument that the DJ Action should be stayed instead.

As Defendants recognize, this action was the first-filed, even if it did not name Sandisk at the time it was commenced. Defendants therefore seek for this action to be stayed based on an exception to the first-to-file rule. "The 'first-to-file rule' is a doctrine of federal comity that permits a district court to decline jurisdiction over an action 'when a complaint involving the same parties and issues has already been filed in another district.'" *Adoma v. Univ. of Phoenix, Inc.*, 711 F. Supp. 2d 1142, 1146 (E.D. Cal. 2010) (quoting *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)). In applying the first-to-file rule, a court looks to three threshold factors: '(1) the chronology of the two actions; (2) the similarity of the parties, and (3) the similarity of the issues.'" *Id.* (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625-26 (9th Cir. 1991)). Conversely, invocation of the first-to-file rule can be used to demonstrate that a stay is improper.

Here, the first-filed action was this one, the parties are the same (and were at the time of filing, as Sandisk was a subsidiary of Western Digital at that time), and the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)                Date:  July 2, 2025
Title:     IPValue Management, Inc. et al. v. Western Digital Corp. et al.

issues are substantially identical.  Recognizing the first-to-file rule is likely to apply, Defendants argue that the "convenience" exception and the "customer-suit" exception apply to defeat the ordinary application of the first-to-file rule.  (Motion to Stay at 8-11, 13-16).

In describing the "convenience" exception to the first-to-file rule, the Federal Circuit explained the exception in this way:

> Section 1404(a) of Title 28 provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The trial courts have discretion to make exceptions to [the first-to-file rule] in the interest of justice or expediency, as in any issue of choice of forum. . . . These exceptions are not rare. . . .  A district court may consider a party's intention to preempt another's infringement suit when ruling on the dismissal of a declaratory action, but that consideration is merely one factor in the analysis. . . . Other factors include the convenience and availability of witnesses, the absence of jurisdiction over all necessary or desirable parties, and the possibility of consolidation with related litigation.

*Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008) (internal citations omitted).

The Court is not persuaded by Plaintiffs' argument that the Motion to Stay is procedurally improper because Defendants did not seek to have the action transferred to the Northern District.  As Defendants explain, the DJ Action has already been filed—whether this action is stayed or transferred to the Northern District is largely immaterial.  (Reply in Support of Motion to Stay at 3-4).

Defendants argue that litigation in the Northern District is more convenient on a number of grounds.  First, Defendants argue that the witnesses and evidence relevant to this action are largely in the Northern District, because Sandisk is headquartered in Milpitas, California, in the Northern District.  (Motion to Stay at 9; *see also* Koh Dec. ¶¶ 4-6).  "[T]o the extent the accused technologies . . . were designed in the United

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV 25-00119-MWF (DFMx)          Date: July 2, 2025
Title:     IPValue Management, Inc. et al. v. Western Digital Corp. et al.

States (as opposed to abroad), they were designed in the Northern District in Milpitas." (*Id.* (citing Koh Dec. ¶ 6)). Therefore, the relevant witnesses and product design documents are located in the Northern District and are unlikely to exist in Sandisk's substantially smaller office in Irvine, California, in the Central District. (*Id.* at 9-10). As Defendants explain, "[i]n patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). The Court notes that Western Digital is also headquartered in San Jose, California, in the Northern District. (FAC ¶ 7).

     Additionally, IPValue's principal place of business is in Santa Clara, California, in the Northern District, and LFMS's principal place of business is in Ireland. (*Id.* ¶¶ 5-6). Their choice of forum is entitled to less weight than if either Plaintiff was at home in this District. *See Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 661 F. Supp. 2d 1109, 1131 (C.D. Cal. 2009) ("A plaintiff's choice of forum is entitled to less deference, however, when the plaintiff elects to pursue a case outside its home forum.").

     Relevant third-party witnesses also reside in the Northern District. Two of the five inventors across the subject patents reside in the Northern District; none reside here. (*See, e.g.*, '365 Patent (Docket No. 1-3) at 1 (listing residences of three inventors as Fremont, California and San Jose, California)). And Cypress Semiconductor Corp., from whom Plaintiffs trace their patent rights, is also based in San Jose, California. (FAC ¶ 2).

     Although Defendants characterize these considerations as being related to the factors considered in weighing whether to transfer venue under 28 U.S.C. § 1404(a), the Court also views them as setting forth Defendants' positions on the first two of the three *Lockyer* factors in granting a stay. That is, in Defendants' view, litigating a matter in an inconvenient district may damage or prejudice Defendants, and the inconvenience will work a hardship if the action is allowed to proceed. *Lockyer*, 398 F.3d at 1110.

     In their Opposition, Plaintiffs argue that the DJ Action would be unlikely to resolve all of the disputes at issue between the parties, and specifically Plaintiffs' claim

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)                    Date:  July 2, 2025
Title:    IPValue Management, Inc. et al. v. Western Digital Corp. et al.

of willful infringement.  (Opposition to Motion to Stay at 8-9).  But the Court does not see any reason that Plaintiffs cannot simply file counterclaims in the DJ Action, given that the matter is largely between the same parties and concerns all of the same patents.  Indeed, the filing of counterclaims in the DJ action would likely be compulsory.  "Under Rule 13(a), an infringement counterclaim to a declaratory judgment action for non-infringement is compulsory. . . . If the counterclaim is not asserted, it is waived and the defendant is barred from bringing that claim in future litigation."  *Pac. Sci. Energetic Materials Co. (Ariz.) LLC v. Ensign-Bickford Aerospace & Def. Co.*, 281 F.R.D. 358, 360 (D. Ariz. 2012) (citing *Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.*, 347 F.3d 935, 938 (Fed. Cir. 2003)).

Plaintiffs argue more powerfully that *Micron Technology*, cited above, is inapposite because it concerned a decision regarding whether to exercise declaratory judgment jurisdiction, which is discretionary.  (*Id.* at 10).  Meanwhile, the Court's exercise of jurisdiction over this action, Plaintiffs argue, is not discretionary.  (*Id.*).  But while the exercise of jurisdiction may be mandatory, "[a] district court's discretion to stay proceedings 'is incidental to the power inherent in every court to control disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Hanover Ins. Co.*, 2016 WL 7230868, at *1 (quoting *Landis*, 299 U.S. at 254 (1936)).  As a result, "[w]hether to stay proceedings is entrusted to the discretion of the district court."  *Id.* (citing *Landis*, 299 U.S. at 254-55).  That is, although the exercise of jurisdiction may not be a discretionary matter, the question actually before the Court—whether to grant a stay—is.

Plaintiffs also argue that under a 28 U.S.C. § 1404(a) analysis, Defendants would not have met their burden because they did not specifically name in the Motion more than one Sandisk employee who would likely provide relevant testimony.  (Opposition to Motion to Stay at 10-11).  Defendants have since identified three additional Sandisk employees located in the Northern District who are likely to provide relevant testimony.  This is unsurprising, given that the allegedly infringing technologies were apparently developed in Milpitas in the Northern District and were unconnected to Sandisk's smaller Irvine office.  (Reply in Support of Motion to Stay at 5-6).  Plaintiffs argue that Defendants have not "identified any non-electronic sources

Case 8:25-cv-00119-MWF-DFM   Document 136   Filed 07/02/25   Page 13 of 17   Page ID #:780

STAY

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)                     Date:  July 2, 2025
Title:    IPValue Management, Inc. et al. v. Western Digital Corp. et al.

of proof, or presented any evidence for other convenience factors such as court congestion or the difference in litigation costs," which may be considered under an ordinary § 1404(a) transfer analysis. (Opposition to Motion to Stay at 11). The Court acknowledges that these arguments are correct—Defendants have not analyzed those factors which would ordinarily appear in a transfer analysis.

But the Court is also struck by the arguments that Plaintiffs *do not* make. Plaintiffs do not articulate a *single* reason why litigation in the Central District is more convenient for any party: Plaintiffs, Defendants, or any third-party. At most, Plaintiffs make a tepid argument that Sandisk also has an office in Irvine, but Plaintiffs do not address Defendants' argument that no employee with any relevant testimony works in that office or resides within the Central District, or else that any relevant evidence is located in Irvine.

In analyzing the *Lockyer* factors, Plaintiffs point to three reasons why they would be prejudiced if this action were to be stayed. A stay would "(1) depriv[e] plaintiffs of their choice of forum, which should be given 'great weight,' . . . ; (2) forc[e] IPValue to litigate two cases serially in two separate forums, substantially increasing their litigation costs and prolonging resolution of this dispute; and (3) delaying recovery of monetary damages at least as to Western Digital, as Defendants squarely acknowledge." (Opposition to Motion to Stay at 12 (internal citations omitted)).

These arguments are misplaced:

*First,* as described above, a plaintiff's choice of forum is entitled to substantially less weight when the plaintiff is not at home in that forum. At the hearing, Plaintiffs argued that this general rule is less applicable in patent matters, because the Supreme Court has affirmed that stricter venue rules apply in patent actions. *See Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1375 (Fed. Cir. 2020) ("[A] corporation may be sued for patent infringement in only two categories of judicial districts: those in the state in which it is incorporated and those in which it has a regular and established place of business and an act of infringement has occurred.") (citing *TC Heartland LLC v. Kraft Food Grp. Brands LLC*, 581 U.S. 258 (2017)).

---

**CIVIL MINUTES—GENERAL**                                          10

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV 25-00119-MWF (DFMx)            **Date:** July 2, 2025
**Title:**     IPValue Management, Inc. et al. v. Western Digital Corp. et al.

However, the Court finds that courts in patent actions regularly apply the rule that a plaintiff's choice of forum is afforded less weight if the plaintiff is not at home in the forum, including after *TC Heartland*. *See, e.g.*, *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) ("When a plaintiff brings its charges in a venue that is not its home forum, however, that choice of forum is entitled to less deference."); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, No. CV 19-01777-JLS (JDEx), 2020 WL 3977781, at *3 (C.D. Cal. May 28, 2020) ("'[W]here the plaintiff does not reside in his chosen forum, courts accord the plaintiff's choice considerably less deference.' . . . Deference to a plaintiff's choice of forum is also substantially reduced when the center of gravity of the alleged infringement is elsewhere.") (quoting *Bondali v. Yum! Brands, Inc.*, No. SACV 13-00117-JST (JPRx), 2013 WL 12129379, at *5 (C.D. Cal. May 1, 2013)). Plaintiffs also raise no argument that venue in the Northern District would be improper.

       ***Second,*** the Court believes that once either of the two actions resolves, it is likely to have preclusive effect over most issues—if not all issues—in the other action. The risk and expense involved in serial litigation is therefore minimal. Additionally, this consideration actually weighs in the opposite direction: The Court cannot predict how the DJ Action will be treated in the Northern District. If this action is not stayed and the DJ Action is not stayed or transferred, ***that*** would be the only sequence of events where there is a reasonable possibility of dual litigation across the two forums. While this may not be the most likely event, it is certainly within the realm of possibilities.

       The third claim of prejudice deserves more attention. Plaintiffs claim that Defendants acknowledge that there will be a delay in monetary recovery if this action is stayed. (Opposition to Motion to Stay at 12). The Court does not read the Motion to Stay as making any such acknowledgment; rather, Defendants argue why a delay in monetary recovery would not be prejudicial ***if*** it occurred. (*See* Motion at 13 ("To the extent IPValue and LFMS contend that they would be prejudiced by a delay in receiving monetary damages from Western Digital, such claims are insufficient to establish the requisite prejudice here."); Reply in Support of Motion to Stay at 8 ("[T]he only ***potential*** harm to Plaintiffs is a ***potential*** delay in pursuing monetary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)    Date:  July 2, 2025
Title:    IPValue Management, Inc. et al. v. Western Digital Corp. et al.

relief, and such delay—by itself—is not 'undue' prejudice in the stay analysis.") (emphasis added)).

The Court again agrees with Defendants on this point, for two reasons:

***First***, if (assuming Plaintiffs here prevail in the DJ Action) there is a delay in receiving monetary damages, it would only be because Plaintiffs elected not to file compulsory counterclaims which would result in the award of monetary damages in that case. Therefore, any delay in receiving monetary damages would stem from Plaintiffs' own strategic decisions in the DJ Action.

***Second***, as Defendants explain, Plaintiffs and Defendants are not competitors, and therefore any delay in receiving monetary compensation is not prejudicial. *See, e.g.*, *Bay Area Surgical Grp., Inc. v. Aetna Life Ins. Co.*, No. 5:13-cv-05430 EJD, 2014 WL 2759571, at *5 (N.D. Cal. June 17, 2014) ("A delay in compensation for past harms does not equate to a strong showing of prejudice.") (citing *CMAX, Inc. v. Hall*, 300 F.2d 265, 268-69 (9th Cir. 1962)). As a result, the Court cannot conclude that a stay in this action would be prejudicial to Plaintiffs.

Of course, the Court is not ignorant of Defendants' likely intentions of preempting this action by filing the DJ Action in the Northern District following Sandisk's spin-off, and the Court may consider that intention to some extent. *Micron Tech., Inc.*, 518 F.3d at 904 ("A district court may consider a party's intention to preempt another's infringement suit . . . but that consideration is merely one factor in the analysis."). Where the convenience of the litigants and witnesses weighs in only one direction, however, this consideration is outweighed by the persuasive argument that litigation in the Northern District would be more convenient for all parties involved.

As the Court sees it, this is a case in which a company at home in the Northern District and a foreign company sued two companies at home in the Northern District. The Plaintiffs have simply not provided any reason why litigation is more convenient in this District. Instead, Plaintiffs rest on the notion that the Court will apply the first-to-file rule despite the apparently conceded inconvenience of litigating in this forum.

| **CIVIL MINUTES—GENERAL** | 12 |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)            Date:  July 2, 2025
Title:      IPValue Management, Inc. et al. v. Western Digital Corp. et al.

But as discussed above, convenience exceptions to the first-to-file rule are "not rare," and the first-to-file rule must bow to the "interest of justice or expediency." *Micron Tech., Inc.*, 518 F.3d at 904.  That is, the Court believes that where there can be little dispute that allowing an action to proceed in another forum will ultimately be more convenient to the parties involved, a doctrinaire adherence to the first-to-file rule is inappropriate.  That is especially true here where the action in the Northern District appears to be farther along than this action.  (*See* Reply in Support of Motion to Stay at 7 (describing that the Northern District Court has ordered the parties to file a proposed scheduling order by July 3, 2025)).  Ultimately, therefore, litigation in the Northern District also appears likely to be more expedient and likelier to produce the faster resolution.

At the hearing, Plaintiffs argued that Defendants' manufacturing operations take place in Japan, meaning that certain of the witnesses and evidence the Court believes would be in the Northern District may actually be found in Japan instead.  However, as Defendants argued at the hearing, it is the ***design*** of the allegedly infringing products that is violative of the patents, not simply the manner in which those products are manufactured.  As one example, with regard to the '240 Patent, the accused products are allegedly designed to include

> a tunnel dielectric layer, a multi-layer charge trapping layer, and a blocking dielectric layer disposed between the gate structure and the channel, wherein the multi-layer charge trapping layer comprises a first dielectric layer disposed abutting a second dielectric layer, wherein the first dielectric layer includes oxygen-rich nitride and the second dielectric layer includes oxygen-lean nitride.

(FAC ¶ 46).

In this context, it is not simply the manufacture that matters, but rather whether the accused products were ***designed*** in conformance with the above description.  Because in proving patent infringement "the plaintiff bears the burden of proof to show the presence of every element or its equivalent in the accused device," it stands to reason that the proof of such infringement would be found at the design level rather

---

**CIVIL MINUTES—GENERAL**            13

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV 25-00119-MWF (DFMx)          Date:  July 2, 2025
Title:    IPValue Management, Inc. et al. v. Western Digital Corp. et al.

than the manufacturing level, especially where the infringement contains such intricate and advanced technology.  *DNA Genotek Inc. v. Spectrum Sols. L.L.C.*, 671 F. Supp. 3d 1105, 1115 (S.D. Cal. 2023) (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011)).

Moreover, the range of products accused of violating the subject patents is broad:  "[T]hese infringing products and services include, without limitation, Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, and all versions and variations thereof."  (FAC ¶ 21 (describing products allegedly violating the '537 Patent)). Although the Court has no evidentiary record before it, it appears a matter of common sense that such widespread violation would much more likely be the result of design-level decisions than manufacturing-level decisions.  The Court therefore believes it is much more likely that documents evidencing Defendants' alleged infringement would be in the Northern District, rather than in Japan, or elsewhere in Asia.

To the extent the allegedly infringing products are manufactured in a way that infringes the patents, they do so because they were designed that way.  It appears clear that those design choices were largely, if not entirely, made in the Northern District.

The Court therefore finds it appropriate as a matter of comity not to rule on the Motion to Dismiss, as doing so would be to opine on matters more properly before the Northern District while this action is stayed.

### IV.   CONCLUSION

The Motion to Stay is **GRANTED**.  The Motion to Dismiss is **DENIED** *without prejudice*.  This action is **STAYED** pending resolution of the DJ Action.  The parties shall file a joint status report every 120 days, or within ten days of resolution, to apprise the Court of the status of the DJ Action, with the first report due no later than **October 29, 2025**.

IT IS SO ORDERED.