Brian Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

*Attorneys for Defendants and Counterclaim Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

SANDISK CORPORATION,

Plaintiffs,

v.

IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS LTD.,

Defendants.

---

IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS LTD.,

Counterclaim Plaintiffs,

v.

WESTERN DIGITAL CORPORATION and SANDISK CORPORATION,

Counterclaim Defendants.

---

Case No. 5:25-CV-02389-PCP

**COUNTERCLAIM PLAINTIFFS IPVALUE MANAGEMENT, INC. AND LONGITUDE FLASH MEMORY SOLUTIONS LTD.'S OPPOSITION TO COUNTERCLAIM DEFENDANTS WESTERN DIGITAL CORPORATION AND SANDISK CORPORATION'S MOTION TO DISMISS**

Hon. P. Casey Pitts
Courtroom 8

Date: September 11, 2205
Time: 10:00 am

**TABLE OF CONTENTS**

I. INTRODUCTION ........ 1
II. BACKGROUND ........ 2
    A. The Central District Action ........ 2
    B. Sandisk's Declaratory Judgment Action ........ 3
III. LEGAL STANDARD ........ 3
IV. ARGUMENT ........ 4
    A. The Counterclaims Plausibly Allege Direct Infringement of the '505 Patent ........ 5
        1. The Counterclaims Allege Specific Facts and Evidence to Support that the Accused 96L and 112L 3D NAND Flash Memory Products Utilize Infringing Techniques ........ 5
        2. Sandisk's Arguments Regarding the ISSCC Paper Are Easily Disproven, and at Best Present Factual Issues Inappropriate for Resolution on a Motion to Dismiss ........ 8
    B. The Counterclaims Plausibly Allege Indirect Infringement of the '505 Patent ........ 15
    C. In the Event the Court Finds the '505 Claims Deficient, Counterclaim Plaintiffs Should Be Given Leave to Amend ........ 15
V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) .......... 15

*AlexSam, Inc. v. Aetna, Inc.*,
119 F.4th 27 (Fed. Cir. 2024) .......... 4, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Bot M8 LLC v. Sony Corp. of Am.*,
4 F.4th 1342 (Fed. Cir. 2021) .......... 4

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) .......... 14

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 15, 16

*Helprin v. Harcourt, Inc.*,
277 F. Supp. 2d 327 (S.D.N.Y. 2003) .......... 14

*In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) .......... 3

*IPValue Mgmt., Inc. et al. v. Western Digital Corp. et al.*,
No. 8:25-CV-00119-MWF (DFMx), Dkt. 1 (C.D. Cal. Jan. 22, 2025) .......... 2

*Kolon Indus., Inc. v. Hyosung Advanced Materials Corp.*,
No. SA CV 24-00415 JVS-JDE, 2024 WL 3915072 (C.D. Cal. July 26, 2024) .......... 12, 16

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018) .......... 3

*Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*,
No. 20-10345 (KM) (ESK), 2021 WL 2680153 (D.N.J. June 30, 2021) .......... 14

*Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*,
609 F. Supp. 3d 1092 (C.D. Cal. 2022) .......... 13

*Sage Electrochromics, Inc. v. View, Inc.*,
No. 12-CV-6441-JST, 2014 WL 1379282 (N.D. Cal. Apr. 8, 2014) .......... 15

**Rules**

Fed. R. Civ. P 12(b)(6) .......... 4, 15
Fed. R. Civ. P. 15(a)(2) .......... 15

## I. INTRODUCTION

Counterclaim Defendants' (collectively "Sandisk") motion to dismiss IPValue's infringement counterclaims for the '505 patent is without merit and should be denied. As explicitly set forth in the counterclaims, the accused products utilize 96L or 112L 3D NAND Flash memory that was developed by Toshiba and Sandisk engineers for commercial sale and which they first presented at the International Solid-State Circuits Conference (ISSCC) in 2018. Sandisk does not dispute that the techniques described in the ISSCC 2018 96L Paper sufficiently correspond to the patented method. Rather, the entire motion is based on Sandisk's factual argument that they have not, in fact, utilized the technology described in their publications in the corresponding commercial products accused of infringement. Sandisk's factual contentions are not appropriate for resolution on a motion to dismiss, where all factual allegations of the complaint must be accepted as true. Sandisk's publications describe infringing technology and provide far more than plausible support for a reasonable inference that Sandisk's products incorporate this technology. Sandisk's motion rests on little more than a factual argument that the counterclaims do not contain proof that this reasonable inference is true. The mere fact that Sandisk may dispute these factual allegations cannot support a motion to dismiss.

Sandisk's arguments are also improper because they rest on a false and misleading characterization of the ISSCC as a "scientific conference," and the ISSCC 2018 96L Paper as a mere "academic paper." These claims are directedly contradicted by the specific factual allegations of the counterclaims, and a plethora of public evidence clearly demonstrating that the ISSCC was a premier forum for major industry players such as Intel, AMD, and IBM to unveil new technologies for the market. Indeed, the ISSCC rules prohibited submissions that were not fabricated and tested. And specifically with respect to the 96L technology described in the ISSCC 2018 96L Paper, there is public evidence that this technology was commercially released just five months after the ISSCC.

Sandisk's arguments to the contrary are not plausible at all, much less the "only plausible" reading of the counterclaims. For instance, Sandisk asserts that the 2010 news article cited at paragraph 74 purportedly "identifies a different conference as the main conference for new product

announcements." Mot. at 1. No reasonable person could reach this conclusion, as the same article identifies several products that were announced at the ISSCC and that were brought to market shortly thereafter, such as Intel's "Tukwila" Itanium 9300 processor that was announced at the ISSCC in 2010 and released for sale later that same year. The rest of Sandisk's motion is riddled with similar disingenuous and illogical "interpretations" of the cited evidence, which are easily disproven just by looking at the actual documents. Regardless, these are disputed factual questions that cannot be resolved on the pleadings.

To the extent Sandisk dispute sthat the accused 96L and 112L products function in the infringing manner described in the ISSCC 2018 96L Paper, this at best creates other factual issues that are also inappropriate for resolution on a motion to dismiss. The counterclaims contain sufficient facts to raise the right to relief above the speculative level and put Sandisk on notice of what activity is being accused, which is all that is required at this stage.

Sandisk's motion to dismiss should be denied.

## II. BACKGROUND

### A. The Central District Action

On January 22, 2025, IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd. (collectively, "IPValue") filed a patent infringement suit against Western Digital in the Central District of California. *IPValue Mgmt., Inc. et al. v. Western Digital Corp. et al.*, No. 8:25-CV-00119-MWF (DFMx), Dkt. 1 (C.D. Cal. Jan. 22, 2025) ("CDCal Action"). The complaint alleged infringement of five patents that generally relate to computer flash memory and storage devices: United States Patent Nos. 8,633,537 ("'537 patent"), 9,929,240 ("'240 patent"), 11,456,365 ("'365 patent"), 6,963,505 ("'505 patent"), and 7,671,664 ("'664 patent"). *Id.*

IPValue's initial complaint did not name Sandisk as a defendant because Sandisk was a wholly-owned subsidiary of Western Digital at the time it was filed. Then in late February 2025, Sandisk separated from Western Digital in a "spin-off" transaction. Sandisk now owns and operates Western Digital's flash memory business as an independent company, but is still partially owned by Western Digital. Accordingly, on April 9, 2025, before Western Digital responded, IPValue filed a first amended complaint adding Sandisk as a defendant. CDCal Action, Dkt. 24.

On May 7, 2025, Western Digital and Sandisk filed a motion to dismiss all five asserted patent infringement claims, and a motion to stay the first-filed CDCal Action pending resolution of this declaratory judgment action. CDCal Action, Dkt. 30, 32. On July 2, 2025, the Central District granted Western Digital and Sandisk's motion to stay and denied the motion to dismiss without prejudice. CDCal Action, Dkt. 42. The Central District did not address the merits of the motion to dismiss.

**B. Sandisk's Declaratory Judgment Action**

On March 7, 2025, Sandisk filed this declaratory judgment action against IPValue. Sandisk's DJ complaint seeks a declaration of non-infringement of the same five patents asserted by IPValue against Sandisk and its former parent Western Digital in the CDCal Action, and with respect to the same accused products. Dkt. 1.

On July 16, 2025, IPValue answered the DJ claims and filed patent infringement counterclaims against Sandisk and Western Digital on the same five asserted patents (the '537, '240, '365, '505, and '664 patents).

Sandisk and Western Digital have now moved to dismiss only the '505 patent infringement claims—though they still seek a declaratory judgment of non-infringement of the '505 patent. They do not challenge the sufficiency of the other four patent infringement counterclaims.

## III. LEGAL STANDARD

"The purpose of a motion to dismiss is to *test the sufficiency of the complaint, not to decide the merits*." *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (emphasis in original).[1] "The plausibility standard does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

The Federal Circuit has repeatedly held that a plaintiff "need not prove its case at the pleading stage." *Id.* (quoting *In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012)); *see also AlexSam, Inc. v. Aetna, Inc.*, 119 F.4th 27, 35 (Fed. Cir.

[1] All quotations herein have been cleaned up.

2024). Nor is a plaintiff "required to plead infringement on an element-by-element basis." *AlexSam*, 119 F.4th at 35. Rather, "it is enough that a complaint place the alleged infringer on notice of what activity is being accused of infringement." *Id.*

"[B]ecause a complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests, it follows that specific facts are not necessary to support every allegation in the complaint." *Id.* at 39. "The level of detail required in any given patent case will vary depending upon a number of factors, including the complexity of the technology, the materiality of any given element to practicing the asserted claim(s), and the nature of the allegedly infringing device." *Id.* In deciding a motion to dismiss under Fed. R. Civ. P 12(b)(6), the court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to" the plaintiff. *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1353 (Fed. Cir. 2021) (applying Ninth Circuit law).

## IV. ARGUMENT

Sandisk's arguments improperly parse the allegations of the counterclaims and focus only on certain portions in isolation and taken out of context, ignore other critical factual allegations supporting that the accused products utilize the patented method, and essentially ask this Court to accept their self-serving, incomplete, and misleading interpretations of the facts to dismiss IPValue's counterclaims at the pleading stage. This is improper. As set forth below, IPValue's counterclaims contain specific facts that, when read together, accepted as true, and construed in favor of IPValue as is required on a motion to dismiss, plausibly support infringement of the '505 patent. These allegations are more than sufficient to put Sandisk on notice of what activity is being accused—which is all that is required at this stage. IPValue is not required to prove up its claims in the pleading. More detailed infringement contentions will be provided in accordance with the schedule set by the Court, and further discovery will provide an opportunity to identify additional evidence relating to these claims.

### A. The Counterclaims Plausibly Allege Direct Infringement of the ’505 Patent

#### 1. The Counterclaims Allege Specific Facts and Evidence to Support that the Accused 96L and 112L 3D NAND Flash Memory Products Utilize Infringing Techniques

IPValue’s counterclaims plausibly allege direct infringement of the ’505 patent. The ’505 patent is directed to a method, circuit, and system for determining a reference voltage. ’505 patent at Abstract. The counterclaims identify exemplary claim 1, which is a relatively straightforward claim that recites a “method of selecting a reference level from a set of possible reference levels, comprising: [1] using each of said possible reference levels to read a set of cells from a memory area; [2] determining a read error rate for each one of said possible reference levels associated with the reading of said set of cells, and [3] selecting a reference level from said set of possible reference levels whose read error rate is relatively low.”

The counterclaims allege that around 2000, Toshiba and a Sandisk entity (later acquired by Western Digital) formed a joint venture to develop and manufacture flash memory chips, and that the accused products “contain flash memory and/or controller chips manufactured by the Toshiba/SanDisk Joint Venture.” Dkt. 39 ¶ 72. The counterclaims explain that “[a]t the International Solid-State Circuits Conference (ISSCC) 2018, held February 11–15, 2018 authors affiliated with the Toshiba/SanDisk Joint Venture presented a paper titled ‘A 512Gb 3b/Cell 3D flash memory on a 96-word-line-layer technology’ (the ‘ISSCC 2018 96L Paper’),” and provides an excerpt from the ISSCC 2018 96L Paper. *Id.* ¶ 73.

The counterclaims further elaborate on the significance and purpose of the ISSCC, including that it is a “global forum for presentation of *advances in solid-state circuits and systems-on-a-chip*,” and that is one of the leading events where new computing products “are brought to market.” *Id.* ¶ 74 (emphasis added). Consistent with this premise, the counterclaims highlight that the “first 96-layer 3D NAND Flash memory made by the Toshiba/SanDisk Joint Venture was ***commercially released*** in July 2018”—five months after the ISSCC 2018 96L Paper was presented. *Id.* (emphasis added). Although not required in a complaint, IPValue provided links to articles, discussed below, supporting these specific factual allegations. *Id.*

To further support that the ISSCC Paper describes technology that was not just "proposed," as Sandisk would have this Court believe, the counterclaims explicitly state:

> The large number of Toshiba and SanDisk engineers listed as authors on the ISSCC 2018 96L Paper indicates that they were working on a technology that was being developed for commercial sale, not merely a research project. The timing of the paper approximately 5 months before commercial announcement of Toshiba/SanDisk 96L memories and the recognized status of the ISSCC conference as a place for products to be brought to market indicates that the ISSCC 2018 96L Paper describes technology developed to be used in the 96L products first sold later in 2018.

*Id.* ¶ 75.

The counterclaims then expressly allege that certain accused products "utilize 96L or 112L 3D NAND Flash memory," and that "[t]hese 96L and 112L Accused Products utilize memory developed by the Toshiba/SanDisk Joint Venture and controllers developed by Western Digital in collaboration with the Toshiba/SanDisk Joint Venture." *Id.* ¶ 76. In other words, the counterclaims specifically identify the accused products as products that utilize 96L or 112L 3D NAND Flash memory. The counterclaims also identify a specific exemplary model of SSD device, the WD Blue SN550 SSD. *Id.* And again, while not required, the counterclaims provide evidence regarding the product specifications and supporting that the identified SSD utilizes 96L NAND Flash memory. *Id.*

The counterclaims further explain that "the ISSCC 2018 96L Paper describes techniques utilized in the operation of the 96L and/or 112L Accused Products." *Id.* ¶ 77. And "[a]s a *further example* of the basis for this information and belief," the counterclaims allege that during meetings with Western Digital in August 2022, IPValue provided Western Digital with evidence of its infringement of the '505 patent, including the ISSCC 2018 96L Paper, and that "Western Digital never denied that the ISSCC 2018 96L Paper accurately described techniques utilized in its products." *Id.*[2] The counterclaims make clear that Western Digital's failure to deny is simply

---

[2] While Sandisk repeatedly suggests that this allegation is false—which is irrelevant on a motion to dismiss—they never actually state that Western Digital did, in fact, deny that its products utilize the techniques described in the ISSCC Paper. Sandisk merely alludes to "Western Digital's purported failure to *comment*." Mot. at 11 (emphasis added). But the counterclaims do not claim that Western Digital failed to comment on the ISSCC Paper.

*additional* evidence supporting that the accused products utilize the techniques described in the ISSCC Paper, and not the sole basis for this allegation as Sandisk misleadingly argues.

The next few paragraphs explain how the accused products infringe the ’505 patent by mapping the steps described in the ISSCC Paper to the elements of claim 1, and by providing annotated diagrams from the ISSCC Paper showing exactly where these steps occur. *Id.* ¶¶ 78–80.



Source: SanDisk/WD-Toshiba, Paper 20.1, ISSCC 2018, A 512Gb 3b/Cell Flash Memory on a 96-Word-Line-Layer Technology

Sandisk does not dispute that the ISSCC 2018 96L Paper sufficiently describes the claimed method.[3] Rather, they argue that the counterclaims do not sufficiently link the techniques described in the ISSCC Paper to the functionality of the accused products. As set forth below, Sandisk is wrong.

[3] Although Sandisk does not assert this as a ground for dismissal, they complain that IPValue used the same excerpt and annotated image for each element of claim 1. Mot. at 5. But it made perfect sense to do so here, as the excerpted image depicts all three of the claim steps. A plaintiff is not required to plead infringement on an element-by-element basis (although IPValue did so here), much less provide unique images and evidence to support each element. *AlexSam*, 119 F.4th at 35.

**2. Sandisk's Arguments Regarding the ISSCC Paper Are Easily Disproven, and at Best Present Factual Issues Inappropriate for Resolution on a Motion to Dismiss**

Sandisk's attempt to characterize the ISSCC 2018 96L Paper as an "academic paper that was presented at a scientific conference" (Mot. at 7) is disingenuous, and, more importantly, directly contradicted by the alleged facts. The counterclaims expressly state that the ISSCC is the premier forum for "*engineers working* at the cutting edge of IC *design and application* to maintain technical currency" to present "*advances* in solid-state circuits and systems-on-a-chip." Dkt. 39 ¶ 74. These are quotes taken directly from the ISSCC website in 2018 and do not mention the word "research" at all. The allegations are further supported by the cited public articles, discussed further below, describing the ISSCC as one of two main events where new computing technology is brought to market—not merely a "scientific conference"—and announcing the commercial release of the 96L memory presented by Toshiba and Sandisk engineers in the ISSCC 2018 96L Paper. *See id.*

Nor does anything in the ISSCC 2018 96L Paper itself indicate that it was merely an academic paper. Sandisk's entire argument rests on the authors' use of the word "propose." Mot. at 7–8. According to Sandisk, "the only plausible inference is that the feature is under research and has not been implemented." *Id.* at 8. This is nonsensical. The authors were not merely researchers or in academia—they were *Toshiba and Sandisk engineers* that were part of a joint venture to develop and manufacture flash-memory chips. Dkt. 39 ¶ 72. It is clear from the context that these engineers were proposing the described chip *for production*—not as some sort of hypothetical research project.[4] The allegation that the authors of the ISSCC Paper "were working on a technology that was being *developed for commercial sale, not merely a research project*" (*Id.* ¶ 75 (emphasis added)) therefore must be accepted as true.

Sandisk's interpretation of the word "propose" is also contradicted by the ISSCC 2018 96L Paper itself. In the excerpt provided above in paragraph 73 of the counterclaims, the authors refer

[4] Indeed, the ISSCC rules expressly prohibit the submission of papers without "silicon implementation and test results." Ex. 1 at 32. Submissions are required to "advance previous work" or "introduce a new concept," and "have hardware," i.e., a "chip [that has] been fabricated and tested." *Id.* at 8. They are also required to provide chip specifications, including "measurements of the fabricated chip." *Id.* at 25.

to other "proposed" technology *from 2007* that was "adopted" in the market. Dkt. 39 ¶ 73. The authors also state that "this paper describes a 512Gb 3b/cell 3D Flash memory in a 96-word-line-layer BiCS FLASH technology," that "*[t]his work implements* three key technologies to improve performance," and reference a figure that shows "the key features of *the chip*." *Id.* In light of this context, is abundantly clear that the authors were describing a chip that had already been developed and was ready for production. Indeed, on January 25, 2018—just 20 days before the ISSCC—*Western Digital's CEO* publicly announced that "we will be ramping our 96 layer technology later this calendar year." Ex. 2. And as promised, the Toshiba/Sandisk Joint Venture released the first 96-layer 3D NAND Flash memory for sale just five months after they presented the ISSCC 2018 96L Paper in July 2018. Dkt. 39 ¶ 74.[5] The counterclaims identify a specific, real-world product marketed and sold by Western Digital that utilizes 96L 3D Nand Flash—the WD Blue SN550 SSD. *Id.* ¶ 76. Sandisk simply ignores all of these specific factual allegations and evidence and focus on a single word, in isolation with no context, while also ignoring the other uses of the very same word that contradict their erroneous interpretation. This is improper, particularly in the context of a motion to dismiss where Sandisk asks this Court to improperly draw inferences about evidence in favor of the moving party. Such inferences would be improper even at the summary judgment stage and are unquestionably inappropriate in a motion to dismiss.

Sandisk's misleading and erroneous characterization of the theregister.com article cited in ¶ 74 similarly fails. According to Sandisk, the article "actually points to a different technology event—the Consumer Electronics Show, or CES—as the venue 'where new PC processors and sundry other computing gadgets are brought to market.'" Mot. at 9. But it is Sandisk who is "misreading" the article, not IPValue. The full sentence in the article states (emphases added): "*The ISSCC event is the second event of each new year*, following the Consumer Electronics Show, *where new PC processors and sundry other computing gadgets are brought to market*." The

---

[5] Shortly thereafter in September 2018, Toshiba and Western Digital announced that "mass production of 96-layer 3D flash memory" had begun. Ex. 3. They stated that they are excited "to expand the market for our latest generation of 3D flash memory," and that "[f]or nearly two decades, the successful collaboration between [Toshiba and Western Digital] has fostered growth and innovation of NAND flash technology." *Id.* This is further evidence that the ISSCC Paper was not merely "academic."

underlined phrase is clearly describing both the ISSCC and the CES as the first two of such events of the year. Sandisk's assertion that it is only describing the CES would mean that the ISSCC (the actual subject of the article) is simply a non-descript "second event" of the year. This makes no sense, and is contradicted by the rest of the article discussing several products that have been or will be brought to market after being announced at the ISSCC by major industry players such as Intel, Advanced Micro Devices, and IBM. For example, the article mentions Intel's "Tukwila" Itanium 9300s, announced at the ISSCC in 2010 and which "started shipping" later that same year. It also discusses the "most interesting chip *for commercial servers* that will be detailed at the [next] ISSCC event [in 2011]," Intel's "Poulson" Itanium processor, the follow-on to Tukwila, which was commercially released in 2012. This refutes Sandisk's spurious assertions that the ISSCC is merely an academic conference for presenting research. Of course, while it may be true that not *every* paper presented at the ISSCC describes a product that is ultimately brought to market, the counterclaims allege sufficient facts and evidence supporting that *the ISSCC 2018 96L Paper* at issue here describes technology that was developed for use in Toshiba/Sandisk's 96L products that were first sold later in 2018.

Sandisk's arguments about the purpose of the ISSCC 2018 96L Paper, and the ISSCC itself, are so off-base as to constitute evidence of bad faith. They are not merely presenting reasonable, good faith alternative interpretations of the evidence (which would not support dismissal in any event)—their arguments are illogical, internally inconsistent, and easily disproven by the evidence cited in the counterclaims and a plethora of other public evidence—including publications and announcements *made by Western Digital* itself, cited above. No reasonable person viewing this evidence could conclude that the ISSCC is for presenting research and not for launching new technology for the market. And certainly, Western Digital—one of the largest chip manufacturers in the world—should already be extremely familiar with the ISSCC and the requirements for presenting at the event.

Indeed, this would not be the first time that Western Digital has intentionally misled the court regarding evidence of its infringement. In *MR Technologies, GMBH v. Western Digital Technologies, Inc.*, No. 8:22-CV-01599-JVS-DFM, the Central District was poised to grant the

plaintiff's § 285 motion for attorney fees based on Western Digital's deceptive conduct, including, but not limited to, submitting false statements about the functionality of its products, withholding critical evidence supporting infringement, and submitting declarations from its expert (and former executive) falsely stating that such evidence did not exist. *See id.*, Dkt. 619. The court issued a tentative order granting the motion and finding Western Digital's conduct, including its "misrepresentations" concerning the evidence, "vexatious." Ex. 4. The parties settled before the final order was entered. In light of Western Digital's previously-demonstrated willingness to go so far as to hide evidence and submit false declarations to try to block an infringement case from proceeding past the pleading stage, this Court should be all the more skeptical about Western Digital's representations regarding the evidence referenced in IPValue's counterclaims. When all of the allegations of the counterclaims are properly read together and accepted as true, the only reasonable inference is that the ISSCC Paper describes an actual Toshiba/Sandisk product, not a feature that was "under research" for academic purposes.

Sandisk next takes issue with the allegation that "the infringing products and services … include Defendants' SSDs, OptiNAND HDDs, USB Flash Drives, Embedded Flash, and Memory Cards containing 3D NAND flash memory, devices ***and all versions and variations thereof since the issuance of the '505 Patent***." Mot. at 8 (citing Dkt. 39 ¶ 66, emphasis by Sandisk). According to Sandisk, "[a] 'proposed' idea in a 2018 academic paper cannot possibly show infringement since November 2005, which is when the '505 patent issued." Mot. at 8. Again, this is not a reasonable, good faith interpretation of the counterclaims. Nowhere do the counterclaims suggest that the ISSCC Paper is proof that Sandisk has been infringing the '505 patent since November 2005. The allegation in paragraph 66 simply defines what products are being accused, and limits the accused products to include only those that issued after the patent. This is fairly standard practice in a patent infringement complaint.

The *Kolon Industries* case cited by Sandisk (Mot. at 8) is easily distinguishable—and in fact supports that IPValue has sufficiently plead infringement of the '505 patent and that Sandisk's motion to dismiss should be denied. In that case, the plaintiff cited to one of defendant's own patent applications as evidence that the defendant manufactures its product by performing the claimed

twisting steps. *Kolon Indus.*, 2024 WL 3915072, at *3. The court found the pleading was "plausible" and "technically sufficient," as it is "not unreasonable to think that the Hyosung Defendants manufacture their HTC consistent with disclosures in the [their patent application], as Kolon pleads." *Id.* at *4. The problem, however, was that there were "inconsistencies in the pleadings" regarding identification of the products depicted in the complaint. *Id.* at *3–4. While the complaint identified the depicted product as a picture of Hyosung's allegedly infringing product, elsewhere the complaint referenced other products. *Id.* at *4. Thus, it was "not clear" whether the depicted product was the infringing product or "some other product," and whether those other products also infringed. *Id.* There were also other "inconsistenc[ies]" in the complaint regarding whether the depicted product was in fact imported into the U.S. *Id.* at *5. The court found these inconsistencies rendered the complaint deficient and granted the plaintiff leave to amend. *Id.* Notably, the court made "clear" that plaintiff is not required "to disclose where it obtained the depicted product to cure these deficiencies." *Id.* The court also noted that the plaintiff could cure the complaint by, for example, simply *alleging* that the accused product infringes in the same manner as the depicted product, and "confirm[ing] that the accused product is used in tires bound for the United States." *Id.* The court did *not* find that additional detail or evidence "linking" the depicted product to the defendant's product was required.

Unlike *Kolon Industries*, there is no uncertainty as to whether IPValue contends that Sandisk's accused products function in the manner depicted in the ISSCC 2018 96L Paper. The counterclaims expressly allege that "[t]he ISSCC 2018 96L Paper describes techniques utilized in the operation of the 96L and/or 112L Accused Products." Dkt. 39 ¶ 77. And like the accused infringer's published patent application in *Kolon Industries*, the ISSCC Paper here plausibly supports that the accused products utilize the infringing technology. The court's holding in *Kolon Industries* refutes Sandisk's assertion that a patent infringement complaint must provide citations to a "product manual, specification sheet," or other "technical product documentation." Mot. at 7. As Sandisk admits, this information is typically confidential and exclusively in the possession of the accused infringers,[6] which is why more detailed infringement contentions are generally not

[6] *See* Mot. at 11 (stating that "its products' inner workings … are trade secrets").

required until after this information is produced in discovery.

Sandisk next takes issue with the allegations regarding Western Digital's failure to deny that the ISSCC 2018 96L Paper describes techniques utilized in its products during the various meetings with IPValue regarding IPValue's infringement allegations. Mot. at 11. Sandisk argues that Western Digital's "purported failure to comment on the ISSCC paper … cannot plausibly suggest that the paper accurately describes any Western Digital or Sandisk product."[7] *Id.* Sandisk improperly reads this allegation in isolation. As discussed at length above, the counterclaims provide numerous specific facts and evidence supporting that Sandisk markets and sells 96L and 112L 3D NAND flash memory products that function in the infringing manner described in the ISSCC 2018 96L Paper. These allegations are sufficient by themselves. But the fact that Western Digital never denied that the ISSCC 2018 96L Paper describes techniques utilized in its products, when IPValue specifically presented the ISSCC Paper as evidence of infringement, lends additional support to IPValue's claims. Under the circumstances as alleged, it is entirely reasonable to infer that if Western Digital's accused products did not actually utilize infringing methods, it would have said so in order to prevent a purportedly baseless lawsuit.

While this may not be the only possible explanation for Western Digital's failure to deny, it is still a plausible one. *See Pensmore Reinforcement Techs., LLC v. Cornerstone Mfg. & Distribution, Inc.*, 609 F. Supp. 3d 1092, 1104 (C.D. Cal. 2022) (even under Rule 9(b)'s heightened pleading standard, "on information and belief" allegations are sufficient "where the claims contain sufficient facts from which such a belief can reasonably be formed"). Indeed, Sandisk admits that "it is perfectly commonplace and reasonable for a company to dispute the patentee's infringement analysis without disclosing anything about its products' inner workings—which are trade secrets—to its potential litigation adversary." Mot. at 11. Western Digital could have easily denied that the products function as described in the ISSCC Paper without disclosing any confidential trade secrets. Its failure to do so then, while not necessarily conclusive, plausibly lends additional support to the

---

[7] As noted above, Sandisk misrepresents the counterclaims as alleging that they failed to "comment" on the on the ISSCC Paper, when in fact the counterclaims state that "Western Digital never denied that the ISSCC 2018 96L Paper accurately described techniques utilized in its products." Dkt. 39 ¶ 77.

inference that the ISSCC Paper accurately describes the functionality of the accused products. And even if Sandisk were to now deny that the ISSCC Paper "describes techniques utilized in the operation of the 96L and/or 112L Accused Products" (Dkt. 39 ¶ 77), this would simply create a disputed issue of fact that is inappropriate for resolution on a motion to dismiss.

Contrary to Sandisk's suggestions, IPValue is not required to disprove all alternative explanations at the pleading stage. The *Hernandez*, *Eclectic Properties*, and *Century Aluminum* cases they cite hold only that where there is an "obvious alternative explanation" that would result in no liability, a plaintiff cannot rely only on facts that could also support that alternative explanation. Even if there were an "obvious alternative explanation" to Western Digital's failure to deny the applicability of the ISSCC Paper during the parties' infringement discussions (there is not), the various other alleged facts discussed above preclude any purported explanation that the accused products do not infringe. As noted in *Eclectic Props. E., LLC* a "complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." 751 F.3d at 996. Nothing about Sandisk's vague, hypothetical alternative explanation for Western Digital's failure to deny (i.e., "accused infringers have no obligation to disclose how their products work" (Mot. at 11)) is so convincing as to render infringement implausible.

Sandisk's other cited cases (none of which are patent cases) are also inapposite. In *Helprin*, the court found that the defendant's silence could not support a breach of contract based on fraudulent concealment because there was no contractual duty to disclose. *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 336–38 (S.D.N.Y. 2003). *Helprin* does not hold that negative inferences can never be drawn from a failure to deny. In *Open MRI*, the plaintiff failed to explicitly allege a valid assignment of health insurance benefits, and the court declined to "infer an allegation" of assignment based on the failure to mention the lack of assignment in EOB forms attached to the complaint. *Open MRI & Imaging of RP Vestibular Diagnostics, P.A. v. Cigna Health & Life Ins. Co.*, No. 20-10345 (KM) (ESK), 2021 WL 2680153, at *2 (D.N.J. June 30, 2021). But here, IPValue is not asking this Court to "infer an allegation" of infringement. There are explicit allegations in the counterclaims that the accused products meet each element of exemplary claim 1

of the ’505 patent. *See, e.g.*, Dkt. 39 ¶¶ 75–80. Finally, *Adams* has nothing to do with inferences based on a failure to deny, and simply states the fundamental rule that “unwarranted inferences are insufficient to defeat a motion to dismiss.” *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). The only unwarranted inferences here are those advanced by Sandisk. *Adams* further states that “[d]ismissal is proper under Rule 12(b)(6) if it appears *beyond doubt* that the non-movant can prove *no set of facts* to support its claims.” *Id.* (emphasis added). Sandisk falls far short of this standard.

**B. The Counterclaims Plausibly Allege Indirect Infringement of the ’505 Patent**

Sandisk’s argument for dismissal of induced, contributory, and willful infringement hinges entirely on their arguments regarding direct infringement, which fail for the reasons discussed above. Sandisk’s indirect infringement arguments necessarily fail too.

**C. In the Event the Court Finds the ’505 Claims Deficient, Counterclaim Plaintiffs Should Be Given Leave to Amend**

Federal Rule of Civil Procedure 15 provides that courts should “freely give leave [to amend] when justice so requires.” Fed. R. Civ. P. 15(a)(2). “This policy is to be applied with extreme liberality.” *Sage Electrochromics, Inc. v. View, Inc.*, No. 12-CV-6441-JST, 2014 WL 1379282, at *1 (N.D. Cal. Apr. 8, 2014). Courts consider the following factors in determining whether to grant leave to amend: “(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether plaintiff has previously amended his complaint.” *Id.* Prejudice to the opposing party “carries the greatest weight.” *Id.* Absent prejudice or a “strong showing” of any of the other *Foman* factors, leave to amend should be granted. *Id.*

None of the *Foman* factors are present here. It is relatively early in the case so Sandisk will not be prejudiced by amendment—the most important factor. Sandisk can point to no evidence of bad faith or undue delay. And IPValue has not amended its complaint in this case. Sandisk’s assertion that “Counterclaim Plaintiffs have repeatedly failed to cure their pleading deficiencies for the ’505 patent” (Mot. at 13) is inaccurate and misleading. IPValue voluntarily amended its complaint *once in the CDCal Action*, as of right, primarily to add Sandisk as a named defendant after the spinoff transaction. IPValue has not amended its complaint in this case, and, perhaps more importantly, the ’505 allegations against Sandisk have never been found to be deficient. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (this factor concerns “repeated failure to cure deficiencies by

amendments previously allowed”). The mere fact that IPValue slightly tweaked the allegations to add some further support in anticipation of a motion to dismiss does not mean that further amendment would be futile. IPValue has already gathered additional evidence supporting its claims, some of which is cited above, and should be given an opportunity to amend in accordance with Rule 15’s liberal policy and this Court’s standing order reiterating that leave to amend must be given freely (though as previously discussed, IPValue respectfully submits that the allegations are already sufficient).

Accordingly, if the Court finds that IPValue’s ’505 claims are deficient, IPValue respectfully requests leave to amend. *See Kolon Indus.*, 2024 WL 3915072, at *3 (granting leave to amend the first amended complaint to clarify allegations regarding the accused products).

## V. CONCLUSION

For the foregoing reasons, Sandisk’s motion to dismiss should be denied.

Dated: August 20, 2025

Respectfully submitted,

*/s/ Brian Ledahl*

Brian Ledahl (CA SBN 186579)
bledahl@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Phone: (310) 826-7474

***Attorneys for Plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions, LLC***

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2025, a true and correct copy of the foregoing document was electronically filed with the Court and served on all parties of record via the Court's CM/ECF system.

/s/ *Brian Ledahl*
Brian Ledahl