# Exhibit 4

<u>MR Technologies, GMBH v. Western Digital Technologies, Inc.</u>
SA CV 22-01599 JVS-DFM

### Tentative Order Regarding MRT's Motion for Attorney Fees

Plaintiff MR Technologies, GMBH ("MRT" or "Plaintiff") filed this patent infringement suit against Defendant Western Digital Technologies, Inc. ("WD" or "Defendant") on August 26, 2022. Complaint, Docket No. 1. This matter proceeded to a jury trial on July 16, 2024. See Day One Minutes, Docket No. 527. The jury returned a verdict finding WD infringed Claims 1, 10, and 11 of U.S. Patent No. 9,928,864 (the "'864 Patent") and Claims 1 and 7 of the U.S. Patent No. 11,138,997 (the "'997 Patent"). Verdict, Docket Nos. 574, 575 (sealed). The jury awarded MRT $262,388,800 in damages. Id.

MRT filed a motion for attorney fees under 35 U.S.C. § 285. (Mot., Dkt. No. 619). WD filed an opposition. (Opp'n, Dkt. No. 638.) MRT replied. (Reply, Dkt. No. 639.) For the following reasons, the Court **GRANTS** MRT's motion.

**I.    Background**

The Court summarized MRT's infringement allegations and discussed the asserted patents in its summary judgment ruling regarding infringement. Docket Nos. 340, 322 (sealed) at 3-4. That discussion is incorporated by reference here. Because a majority of the technical arguments here relate to infringement, this discussion provides sufficient background.

**II.    Legal Standards**

Under the Patent Act, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. While the Patent Act does not define "exceptional," the Supreme Court has construed it in this context to have its ordinary meaning, i.e., "'uncommon,' 'rare,' or 'not ordinary.'" <u>Octane Fitness, LLC v. ICON Health & Fitness, Inc.</u>, 572 U.S. 545, 553 (2014). Thus, a case is exceptional when it "stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." <u>Id</u>. at 554. Section 285 discourages certain "exceptional" conduct by imposing the cost of bad decisions on

1

the decision maker. District courts are instructed to determine whether a case is "exceptional" on a case-by-case basis, considering the totality of circumstances. See id. Conduct need not be sanctionable to still be "'exceptional' as to justify an award of fees." Id. at 555. A case presenting "either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." Id. Other relevant factors may include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554 (quotations omitted). The moving party need only show by a preponderance of the evidence that it is entitled to fees. Id. at 558.

### III.   Discussion

  A.   Manner of Litigation

MRT argues that six instances of unreasonable litigation tactics support a fee award here. The Court considers each instance.

  1.   Misrepresentations Concerning Anisotropy Data and Testing

During discovery in this case, WD filed two motions to strike MRT's infringement contentions. Docket Nos. 38-1 and 102-1. The first motion challenged MRT's composition-based infringement theory as inconsistent with certain claim limitations. Docket No. 38-1 at 2-3. In its motion, WD indicated that its "testing does not include measurements of the anisotropy of the layers of the storage media, nor can anisotropy of the individual layers be inferred from [its] testing. In fact, obtaining actual values of magnetic anisotropy of individual layers is not feasible nor useful when optimizing performance of our products." Id. at 22-23. The Court granted WD's motion to strike and ordered MRT to serve amended infringement contentions. Docket No. 82 at 8. The Court denied WD's stay request, finding WD "presumably has [requested product information] readily available." Id. at 9. MRT then served requests for all WD documents relating to anisotropy of the accused products. Docket No. 619-2 RFP Nos. 45 and 46.

Shortly after WD filed its first motion to strike, MRT filed a motion to compel WD to produce documents and information for additional accused products. *See* Dkt. 43-1 at 1. Though not stated expressly, the Court understands these requests to include anisotropy information for the accused products, especially given discussions of anisotropy throughout the parties' joint stipulation. Id.; see also Docket No. 44-3,

RFP Nos. 1-5. The Court denied the motion to compel as premature given WD's pending motion to strike. Docket No. 66 at 1-2. It does not appear that MRT ever refiled its motion to compel.

WD then filed a second motion to strike, again arguing that the recipes it produced do not support MRT's contention that anisotropy increases across layers. Docket No. 102-1 at 4. WD reiterated that its testing does not include anisotropy of layers in storage media and that anisotropy of layers cannot be inferred from testing. Id. at 18-19. The Court denied WD's second motion to strike. Docket No. 153.

The parties agree that WD later produced anisotropy data for the accused products. Mot. at 11; Opp'n at 7-8. In fact, at trial, WD's technical expert, Bertero testified that "WD does, in fact, do testing to determine anisotropy of many of the materials that is uses in its products" and confirmed that WD's testing data generally allows for determination of anisotropy. 07/24/24 Vol. I Tr., Docket No. 631 at 32:24-34:5 and 37:16-19. In an effort to explain its inconsistent positions, WD attempts to distinguish anisotropies of raw material from anisotropy of layers of the storage media. Opp'n at 7-8. However, the statements in WD's motion to strike do not focus on the raw materials distinction and broadly indicate that WD does not have test data sufficient to infer anisotropy of layers. Given WD's later production and the trial record, these statements were not true.

WD's misrepresentations support a fee award as they delayed discovery in this action, depriving MRT of the data it needed to support its infringement position.

2.   Misrepresentations Concerning Cap Layer Anisotropy

In connection with its motions to strike, WD also represented that the cap layer has a high anisotropy. See Docket No. 102-1 at 22 ("Without the high-anisotropy cap layer, . . . many other magnetic properties involved in switching greatly degrade and the media becomes non-performing" and "it needs to have very high anisotropy to maintain perpendicular magnetization"); see also Docket No. 70-1 at 19 (relying on "the fact that platinum concentration is highest in the uppermost cap layer, which is known to have a very high anisotropy.") Bertero later testified that "every cap layer in every product has the lowest anisotropy." 07/24/24 Vol. I Tr., Docket No. 631 at 55:3-7. He admitted he made earlier statements concerning high anisotropy "without sufficient evidence" and without the necessary data. Id. at 56:1-5. He admitted his earlier statements "turned out not to be true." Id. at 56:19-22. WD argues the initial statements in the motions to strike were not misrepresentations because they were only addressing MRT's earlier theory of anisotropy based on platinum or oxygen

concentrations. Opp'n at 8. Again, however, the statements themselves are not so limited and broadly indicate that the cap layer has high anisotropy. The Court also does not find that the evidence merely shifted here. *Alifax Holding SpA v. Alcor Sci. LLC*, No. 2022-1641, 2024 WL 2932910, at *10 (Fed. Cir. June 11, 2024). At best, WD failed to investigate the properties of the cap layer before making its initial statements.

Again, these misrepresentations prolonged the discovery process in this action and delayed MRT's ability to prove infringement until later in the case.

### 3. MRT's Motion to Strike Untimely Noninfringement Arguments

MRT argues that the circumstances prompting the motion to strike also support a fee award here. Mot. at 14-16. To summarize, WD disclosed new testing data and infringement theories based on that data a day before the close of fact discovery. Order, Docket No. 324 at 1-2. The Court found WD's justifications for the belated testing unpersuasive and granted MRT's motion to strike the untimely theories and testing. Id. at 8. WD argues that because the Court already struck the untimely theories, that same conduct should not support a fee award. Opp'n at 9. MRT responds that the Court should consider the totality of the conduct, including previously sanctioned conduct. Reply at 8.

Here, the cases WD cites do not stand for the proposition that other remedies weigh against a fee award. See Khan v. Hemosphere Inc., 825 F. App'x 762, 772 (Fed. Cir. 2020) (discussing prior sanction award but also relying on finding that conduct was "unorthodox" but not "exceptional" to deny fee award). Rather, the Court considers the totality of the circumstances. Romag Fasteners, Inc. v. Fossil, Inc., 866 F.3d 1330, 1340 (Fed. Cir. 2017) (finding prior "misconduct cannot be disregarded on the theory that failure to award fees is equivalent to double-sanctioning" and further indicating "the fact that this misconduct has already been sanctioned should be weighed more heavily, rather than be excluded."); see also Cambrian Sci. Corp. v. Cox Commc'ns, Inc., 79 F. Supp. 3d 1111, 1116 (C.D. Cal. 2015) (acknowledging that the Court quickly struck an untimely asserted claim but considering "overall" whether the "litigation conduct is an independently sufficient ground for finding the case exceptional.")

Accordingly, though the conduct prompting the motion to strike alone is not dispositive, it forms part of the pattern of untimely disclosure here.

### 4. New Noninfringement Theories

4

MRT argues that fees are appropriate due to WD's assertion of several untimely theories, which the Court struck. See Order re MILs, Docket No. 473 at 3-5 and 8-10; Summary Judgment Order re Invalidity, Docket No. 323 at 6-7. These untimely theories include:

- New reverse doctrine of equivalents theories. Docket No. 473 at 3-4.

- Previously undisclosed non-infringing alternatives and accompanying layer recipes. Id. at 4-5.

- New indefiniteness and obviousness theories. Docket No. 323 at 6-7.

- Prior art disclosed for the first time at the summary judgment stage. Docket No. 473 at 8-10.

MRT also argues that WD's theory that the upper G layers do not assist in switching was improperly disclosed for the first time at trial. Mot. at 17. The Court struck this theory. 07/23/24 Vol. I Tr., Docket No. 630 at 8:4-16:14. For the reasons discussed in the Court's ruling regarding WD's Rule 59 Motion, the Court maintains its ruling that this theory is untimely. Tentative Ruling § III.B.1.ii.

Again, though the conduct prompting these rulings is not dispositive, it forms part of the pattern of untimely disclosure.[1]

5.   Noninfringement Theories Contrary to Claim Construction

MRT argues that fees are appropriate due to WD's noninfringement arguments contradicting the claim construction rulings. Mot. at 17. In his rebuttal expert report, Bertero opined that the nucleation host layers "do not permit plateaus or decreasing anisotropy across adjacent ferromagnetic layers." Order re MILs, Docket No. 473 at 2 (citing Bertero Report, Docket No. 345-4 ¶ 178). Bertero also opined that the HMSL "determines the thermal stability of the whole structure." Id. (citing Bertero

---

[1] WD cites Baggage Airline Guest Servs., Inc. v. Roadie, Inc., No. CV 18-707-RGA, 2020 WL 757891, at *2 (D. Del. Feb. 14, 2020), aff'd, 828 F. App'x 721 (Fed. Cir. 2020) in support of its position with the parenthetical, "finding that arguments leading to motions to strike in combination with other issues did not warrant a finding of exceptionality." Opp'n at 10. As best as the Court can tell, the decision only mentions a motion to strike at *3 and the decision to deny fees focused more on other considerations, including a lack of nefarious intent, lack of overall vexatious strategy, and lack of recurring patterns. 2020 WL 757891 at *3-4.

Report ¶ 104).  The Court struck these opinions as inconsistent with the claim construction rulings.  Id. at 1-3.  Though this conduct does not rise to "persistent disregard" of the Court's claim construction ruling, see Spitz Tech. Corp. v. Nobel Biocare USA LLC, No. 17-660, 2018 WL 6164300, at *5 (C.D. Cal. June 7, 2018), aff'd, 773 F. App'x 625 (Fed. Cir. 2019), it does form part of a pattern of conduct that increased the amount of litigation here.

### 6. Revisiting Issues

MRT also argues that fees are appropriate because WD's conduct forced the Court to revisit decided issues both in pre-trial rulings and during trial.  Mot. at 18-20.  This conduct includes adding material in expert reports when the Court denied WD leave to amend its invalidity contentions to include the same material (id. at 18), including struck noninfringement arguments in expert reports (id. at 19), and raising struck noninfringement arguments at trial (id. at 19-20).  WD argues that it could not avoid revisiting issues at the pretrial phase due to the timing of the motions and rulings.  Opp'n at 11-12.  WD contests that it raised new theories at trial.  Id. at 12.

As to revisiting issues at the pretrial stage, the Court does not fault WD any more than discussed in previous sections for that conduct.  The close timing of summary judgment, Daubert, and motions in limine in this case presented a challenge for both the Court and the parties.  The Court discussed the trial arguments in its ruling regarding WD's Rule 59 Motion.  Tentative Ruling, § III.B.i-iii.  For the reasons discussed in that order, the Court maintains its ruling that these theories were improper or untimely.  Again, raising new or previously struck noninfringement arguments at trial contributes to a pattern of conduct that increased the amount of litigation here.

\* \* \*

On balance, the Court finds WD's conduct in this case vexatious.  WD's conduct substantially increased the amount of work, for both MRT and the Court.  For instance, WD's misrepresentations concerning the anisotropy data and cap layer delayed the parties' efforts to crystallize their infringement and noninfringement positions in this case, even if not made in bad faith.  Further, the struck material discussed in this order generated a significant amount of motion practice that likely could have been avoided with a more diligent approach or more careful consideration of prior rulings. Federal Circuit authority supports a fee award in these circumstances.

"[U]nreasonable conduct – while not necessarily independently sanctionable" may warrant a fee award. Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 555 (2014). For instance, in SRI Int'l, Inc. v. Cisco Sys., Inc., the Federal Circuit confirmed that litigation conduct "create[ing] a substantial amount of work for both [the opposing party] and the court, much of which work was needlessly repetitive or irrelevant or frivolous" supported a fee award. 14 F.4th 1323, 1332 (Fed. Cir. 2021). Still, this repetitive work was not the only consideration. Id. (finding the defendant "crossed the line in several regards.") In Drop Stop LLC v. Jian Qing Zhu, the Federal Circuit confirmed a fee award based in part on "failing to produce discovery" and "raising previously-stricken or waived defenses." 757 F. App'x 994, 999 (Fed. Cir. 2019). Here, WD ultimately did produce the anisotropy data. On balance, WD's conduct in this case shares similarities to the conduct at issue in SRI and Drop Stop.

Accordingly, in view of this authority and the conduct discussed above, the Court finds this case exceptional and **GRANTS** MRT's motion for attorney fees. However, for the reasons discussed below, the Court does not accept the amount of fees MRT proposes.

B.  Substantive Strength

MRT also argues that WD took three weak litigation positions at trial, further supporting the request for fees. Mot. at 21-22. The Court addresses each instance.

First, the Court does not consider WD's arguments about the test data Re relied upon objectively baseless. The Court addressed this issue in its tentative ruling regarding WD's Rule 50(b) Motion. Tentative Ruling § III.A.1.iv. One problem with WD's argument is that even if Re had used the dataset WD contended was correct, the outcome would not have changed. Id. The Group 3 products would still have coercive field measurements meeting the claim limitations. Id. Still, Re's decision to use an entirely different dataset for only the Group 3 products was odd. See id. On balance the Court does not find WD's reliability position objectively baseless. However, WD's decision to raise this issue at trial, as a credibility challenge, as opposed to raising it at the Daubert stage, supports the above findings concerning the manner of litigation.

Second, the Court does not find WD's position that the G1 layer does not store objectively baseless. WD was entitled to argue at trial that the accused products do not meet the claim limitations. The jury heard evidence that the accused products did meet the HMSL storage limitation, as part of a stack, but did not meet the claim

limitations in isolation. See Tentative Ruling § III.A.1.i. In other words, the parties presented a dispute whether the Court's "store data in magnetically oriented bits" construction applied to the layer MRT identified as the HMSL. The jury then considered these arguments and the claim language and determined the accused products infringed. The fact that the jury sided with MRT here does not mean WD's position was objectively baseless.

Third, the Court does not find WD's argument about the 2K/M formula objectively baseless. As discussed in the tentative ruling regarding WD's Rule 50(b) Motion, the asserted patents disclose the 2K/M formula in the context of a bilayer structure. Tentative Ruling § III.A.1.iii. The specification does not limit the formula's applicability to that context, as WD contends. Id. However, the specification also does not expressly indicate that the formula applies in a multilayer context. Id. Thus, MRT presented evidence that the formula applies, with modifications, in the multilayer context. Id. WD rebutted those arguments. Id. The fact that the jury sided with MRT does not render WD's position objectively baseless.

Finally, the Court does not find WD's invalidity arguments concerning Hagedorn and Li objectively baseless. The parties disputed whether Hagedorn is in the same field of endeavor and whether Hagedorn is applicable prior art. Tentative Ruling § III.B.2. The parties also disputed the import of Li. Victora's letter concerning Seuss' contributions was just one piece of evidence, which WD attempted to rebut. Ultimately, the jury determined that these combinations did not invalidate the asserted patents. However, this finding does not mean WD's position was objectively baseless. Additionally, the Court's statements at the summary judgment stage do not indicate these arguments were objectively baseless. In fact, though it described the motivations to combine as "thin," the Court found them sufficient to raise a triable issue of fact as to validity.

Accordingly, the Court does not find this case exceptional due to weak litigation positions but rather due to the manner of litigation.

    C.    Reasonableness of Requested Fees

Though the Court finds fees appropriate here, the Court does not presently accept the amount of fees MRT proposes. Attorney fees are "compensatory, not punitive." In re Rembrandt Techs. LP Pat. Litig., 899 F.3d 1254, 1278 (Fed. Cir. 2018). Courts may reject full fee awards absent a showing that the misconduct "so severely affect[ed] every stage of the litigation that a full award of attorney fees was proper." Large Audience Display Sys., LLC v. Tennman Prods., LLC, 745 F. App'x

153, 157 (Fed. Cir. 2018) (quoting In re Rembrandt 899 F.3d at 1279); see also Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1553 (Fed. Cir. 1989) ("[T]he penalty imposed must in some way be related to bad faith misconduct.").

Here, MRT has not shown that the six instances discussed above affect every stage of litigation. Instead, MRT argues that both the weakness of the litigation positions and the manner of litigation support fees here. Reply at 15. The Court disagrees concerning WD's substantive positions. Additionally, while the Court appreciates that MRT already eliminated certain time entries, it does not appear that the limitation was based on the conduct at issue. Accordingly, MRT shall revise its fee request and supporting documentation to focus on the instances of misconduct discussed in this order.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** MRT's motion and finds this case exceptional. However, for the reasons stated herein, the Court finds the amount of fees MRT requests unreasonable. MRT shall prepare amended documentation, along with a five page supplemental brief discussing the fees it incurred in relation to the conduct discussed in this order. MRT shall file its supplement within 14 days of this order. WD may then file a five page response within 21 days of this order. The Court also encourages the parties to take this opportunity to meet and confer again to discuss WD's objections concerning block billing, industry rates, and vague time entries.

**IT IS SO ORDERED.**