UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>IPVALUE MANAGEMENT, INC., et al.,<br><br>Defendants. | Case No.  25-cv-02389-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 40, 46, 52 |

Plaintiff Sandisk Corporation filed this action against defendants and counterclaim-plaintiffs IPValue Management, Inc. and Longitude Flash Memory Solutions Ltd. ("LFMS"), seeking a declaration of non-infringement with respect to five patents the defendants own or hold the right to assert. IPValue Management and LFMS (together, "IPValue") then filed counterclaims against both Sandisk and counterclaim-defendant Western Digital Corporation alleging infringement of each of the five patents. Now before the Court is Sandisk and Western Digital's motion to dismiss the counterclaim concerning U.S. Patent No. 6,963,505 (the "'505 patent"). For the reasons below, the Court denies the motion to dismiss.[1]

## BACKGROUND

LFMS and IPValue Management are intellectual-property and technology-licensing companies.[2] LFMS, which owns or holds the rights to assert the five patents at issue in this action, granted IPValue Management exclusive licenses to those patents, including the '505 patent. The '505 patent is directed to a "method, circuit, and system for determining a reference voltage."

---

[1] The Court denies as moot Sandisk's motion to stay discovery and to amend the case schedule pending the issuance of this order, Dkt. No. 46, as well as IPValue's request to expedite resolution of that motion, Dkt. No. 52.

[2] For the purposes of Sandisk and Western Digital's 12(b)(6) motion to dismiss, the Court accepts as true the allegations in IPValue Management, Inc., and LFMS's counterclaims.

Claim 1 recites:

> [a] method of selecting a reference level from a set of possible reference levels, comprising: [1] using each of said possible reference levels to read a set of cells from a memory area; [2] determining a read error rate for each one of said possible reference levels associated with the reading of said set of cells; and [3] selecting a reference level from said set of possible reference levels whose read error rate is relatively low.

U.S. Patent No. 6,963,505 (filed Oct. 29, 2003) (issued Nov. 8, 2005).

Sandisk and Western Digital (collectively "counterdefendants") both design and manufacture memory-based storage devices. From 2024 to early 2025, Sandisk was a wholly-owned subsidiary of Western Digital, and Western Digital remains a partial owner of Sandisk.

In approximately 2000, Sandisk formed a joint venture with the Toshiba Corporation to develop and manufacture flash-memory chips. Western Digital acquired the entity within the Sandisk responsible for the joint venture in 2016. Sandisk and Western Digital use flash-memory and controller chips manufactured by the joint venture in many of their products.

In February 2018, more than 60 engineers affiliated with the joint venture between Toshiba and Sandisk presented a paper at the International Solid-State Circuits Conference ("ISSCC"). IPValue alleges that the paper, titled "A 512Gb 3b/Cell 3D Flash Memory on a 96-Word-Line-Layer Technology," describes methods for selecting a reference voltage for flash-memory devices that satisfy all claim limitations for at least claim 1 of the '505 patent. Relying on an article about the conference, IPValue also alleges that the ISSCC is known as an event "where new PC processors and sundry other computing gadgets are brought to market." Timothy Prickett Morgan, *Forget Xmas: Get set for the octacore v Bulldozer DEATHMATCH*, The Register (Dec. 1, 2010), https://www.theregister.com/2010/12/01/isscc_ 2011_chip_preview/. In July 2018, just five months after its engineers presented the paper at the ISSCC, the joint venture between Toshiba and Sandisk commercially released the first 96-layer 3D NAND flash memory.

In January 2025, IPValue sued Western Digital, which then wholly owned Sandisk, in the U.S. District Court for the Central District of California, alleging infringement of five patents including the '505 patent. The court granted a stay of that action after concluding this district is a

more convenient venue for the dispute. In March 2025, Sandisk and Western Digital filed this action against IPValue, seeking a declaration of non-infringement as to the same five patents at issue in the Central District action. IPValue then reasserted its infringement claims from the Central District action as counterclaims against Sandisk and Western Digital. As to the '505 patent, IPValue alleges that "all versions and variations" of the counterdefendants' memory-based storage devices "containing 3D NAND flash memory" that have been released "since the issuance of the '505 patent" in 2005—and which the counterdefendants have commercially distributed, made, or imported in the United States—infringe one or more claims of the '505 patent. The counterdefendants now move to dismiss IPValue's counterclaim for infringement of the '505 patent.

### LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." If the complaint fails to state a claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plausible claim must do more than merely allege entitlement to relief; it must support the grounds for that entitlement with sufficient factual content." *Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021). "Accordingly, a plaintiff cannot assert a plausible claim for [patent] infringement … by reciting the claim elements and merely concluding that the accused product has those elements. There must be some factual allegations that, when taken as true, articulate why it is plausible that the accused product infringes the patent claim." *Id.*

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Id.* (quoting *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005)). While legal conclusions "can provide the framework" of a party's claim, the Court will not assume they are correct unless adequately "supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Courts do not "accept as true allegations that are merely conclusory, unwarranted

3

1  deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049,
2  1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.
3  2001)).

## DISCUSSION

For the purposes of their motion to dismiss, the counterdefendants do not dispute that the paper describes methods for selecting a reference voltage for flash-memory devices that, if used, would infringe the '505 patent. Instead, the counterdefendants argue that IPValue has not plausibly alleged that any of the counterdefendants' products actually used those methods, as IPValue must do to state a claim for infringement of the '505 patent's method claims. *See* 35 U.S.C. § 271(a); *see also Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006). But while IPValue does not allege facts directly showing the counterdefendants' use of the methods described in the paper, IPValue does allege circumstantial facts sufficient to plausibly infer that at least some of the counterdefendants' products employ the methods. IPValue therefore states a claim for relief.

IPValue alleges four facts that, it argues, collectively support an inference that the counterdefendants use the methods described in the paper in its commercial products: (1) "[t]he large number of Toshiba and SanDisk engineers listed as authors on the [paper]," which "indicates that they were working on a technology that was being developed for commercial sale"; (2) the paper's presentation at the ISSCC, which has "recognized status … as a place for products to be brought to market"; (3) "the timing of the paper," which was released "approximately 5 months before commercial announcement of [the allegedly infringing] Toshiba/SanDisk 96L memories"; and (4) that fact that in presuit discussions "Western Digital never denied that the [paper] accurately described the techniques utilized in its products."

The counterdefendants contend that although these allegations may be consistent with infringement, they are as or more consistent with the alternative explanation "that a group of engineers spread across multiple companies presented research" in the paper at the ISSCC "that may or may not be implemented in a commercial product." The counterdefendants argue that "[s]omething more is needed, such as facts tending to exclude the possibility that the alternative

4

explanation is true." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013); *see also Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1354 (Fed. Cir. 2021) ("Under *Iqbal/Twombly*, allegations that are 'merely consistent with' infringement are insufficient.'" (quoting *Bell v. Twombly*, 550 U.S. 544, 557 (2007)). But three of IPValue's allegations suggest that it is at least plausible that the counterdefendants use the methods described in the paper in commercial products.

First, IPValue alleges, and the paper shows, that a large number of Toshiba and Sandisk engineers worked on the paper. Though the counterdefendants argue that "it is not clear why the numerosity of authors ... plausibly suggests that a technology described in a conference paper would be implemented in a commercial product," it is common sense that a corporation that sells flash-memory devices for profit would not expend significant human resources developing flash-memory technology that it does not expect to incorporate into its products. *Cf. Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1034 (9th Cir. 2014) (Rawlinson, J., concurring) ("[P]rofit-seeking is the reason most corporations exist."); *see also Iqbal*, 556 U.S. at 663–64 (explaining that a courts must "draw on its experience and common sense" when "determining whether a complaint states a plausible claim"). That more than 60 engineers from the joint venture between Toshiba and Sandisk worked on the paper thus suggests that the companies at least considered implementing the paper's techniques in commercial products.

Second, IPValue alleges that the paper was presented at the ISSCC, a conference "recognized" as "a place for products to be brought to market." The counterdefendants assert that IPValue misrepresents the nature and reputation of the ISSCC. Indeed, the article IPValue quotes for that proposition refers to a different conference as the event "where new PC processors and sundry other computing gadgets are brought to market." Timothy Prickett Morgan, *Forget Xmas: Get set for the octacore v Bulldozer DEATHMATCH*, The Register (Dec. 1, 2010), https://www.theregister.com/2010/12/01/isscc_2011_chip_preview/.[3] The article describes the

---

[3] Because IPValue repeatedly refers to and heavily relies on the article in its counterclaim, the article is incorporated by reference and the Court may properly consider it. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

5

ISSCC in contrast as a conference "where the hard-core techies get to show off their etchings and their IQs, particularly with processors used in servers." *Id.* Still, the article discusses at least two processors that had been or were expected to be released for commercial sale less than one year after first being presented at the ISSCC. *Id.* So IPValue's allegation that the ISSCC has a reputation as an event at which soon-to-be-sold products are presented is plausible.

Third, IPValue alleges that Sandisk and Toshiba engineers presented the paper just five months before Sandisk and Toshiba released an accused product: a 96-layer 3D NAND flash memory. The counterdefendants insist that this timing is meaningless because "IPValue does nothing to connect the [paper] to any actual features" of the product. But the paper specifically describes a "3b/cell 3D Flash memory in a 96 word-line-layer BiCS FLASH technology," and the accused product itself used a "96-layer, BiCS FLASH™ 3D flash memory." *Toshiba Memory Delivers Industry's First SSD Using 96-Layer 3D Flash Memory*, KIOXIA (July 23, 2018), https://americas.kioxia.com/en-ca/business/news/2018/ssd-20180723-1.html.[4] In other words, the paper describes a technology of the very same type as the accused product. The closeness in time between the paper's presentation and the product's release supports an inference that the product relies on the methods described in the paper. *Cf. Thomas v. City of Beaverton*, 379 F.3d 802, 812 (9th Cir. 2004) (explaining that, in the employment-discrimination context, a causal link between events may be inferred from proximity in time); *Golub v. Sec'y of Health & Hum. Servs.*, 243 F.3d 561 (Fed. Cir. 2000) (holding that, in the vaccine-injury context, "a strong temporal relationship, while not determinative, is highly probative of a causal connection").

The counterdefendants attempt to rebut this common-sense inference by pointing to a statement in the paper that it "propose[s]" a method, which the counterdefendants interpret to mean that "the feature [wa]s under research and ha[d] not been implemented." Thus, the counterdefendants contend, the techniques described in the paper could not have been implemented in any products pre-dating the paper, nor in the accused product released shortly

---

[4] This webpage, to which IPValue cites and on which its counterclaim expressly relies, is also incorporated by reference into the counterclaim and thus properly before the Court. *See Khoja*, 899 F.3d at 1002.

6

after the paper's presentation and presumably developed in advance of the presentation. As IPValue argues, however, the paper also includes language suggesting that the researchers had already manufactured a working chip that implemented the methods discussed therein. For example, the paper states that it "describes a … Flash memory," which "implements three key technologies," and discusses "the key features of the chip." Read in the light most favorable to IPValue, the paper describes a fully developed technology that could plausibly have been implemented in the product released shortly after the 2018 ISSCC, despite the use of the word "propose." While IPValue's allegations concerning the counterdefendants' use of the paper's methods in products released prior to the 2018 ISSCC may be deficient, that does not warrant dismissal of IPValue's counterclaim. *See Iqbal*, 556 U.S. at 678 (explaining that only the claimant's ultimate "entitlement to relief" must be plausible, not that each of multiple alleged bases for such entitlement must be).

IPValue also argues that Western Digital's alleged failure in presuit negotiations to deny that its products use the methods described in the paper suggests that Western Digital commercialized those methods. The Court disagrees. First, giving weight to this allegation runs counter to the spirit of Federal Rule of Evidence 408, which provides that "conduct or a statement made during compromise negotiations about the claim" is inadmissible "to prove or disprove the validity … of a disputed claim." Fed. R. Evid. 408(a)(2). As the Ninth Circuit has explained, "Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail." *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1161 (9th Cir. 2007). For that reason, multiple courts in this circuit have held that although evidentiary rules ordinarily do not apply at the pleading stage, it is improper to use allegations about compromise negotiations as the basis for a cause of action in a complaint. *See City of Tillamook v. Kennedy Jenks Consultants, Inc.*, No. 3:18-cv-02054, 2019 WL 1639930, at *2 (D. Or. Apr. 16, 2019) (collecting cases granting Rule 12(f) cases to strike such allegations). But even considering the allegations about Western Digital's presuit-negotiation conduct, they carry little weight. Western Digital had no obligation to confirm or deny its commercialization of the methods described in the paper, and its lack of denial could just as

plausibly have been motivated by a desire to conceal information about the inner-workings of its products. *Cf. Quintara Biosciences, Inc. v. Ruifeng Biztech, Inc.*, 149 F.4th 1081, 1085 (9th Cir. 2025) (explaining that "trade secrets derive their value from nondisclosure").

Still, IPValue's first three allegations about the paper—the number of Sandisk and Toshiba authors, its presentation at the ISSCC, and the closeness in time to the commercial release of an accused product—are enough for it to be plausible that the counterdefendants used the methods described in the paper in at least one accused product. As a result, IPValue has provided factual allegations sufficient to "articulate why it is plausible that the accused product infringes the patent claim." *Bot M8 LLC*, 4 F.4th at 1353.[5]

## CONCLUSION

For the foregoing reasons, the counterdefendants' motion to dismiss, Dkt. No. 40, is DENIED.

**IT IS SO ORDERED.**

Dated: October 7, 2025

P. Casey Pitts
United States District Judge

---

[5] *Kolon Industries, Inc. v. Hyosung Advanced Materials Corp.*, on which the counterdefendants rely, is not to the contrary. *See* No. CV 24-00415, 2024 WL 3915072 (C.D. Cal. July 26, 2024). In that case, the plaintiff's complaint provided pictures of defendant's methods for creating certain products, which the court found plausibly alleged infringement of plaintiff's method patent. *Id.* at *3–4. But the complaint did not expressly allege that the infringing methods featured in the pictures were used to create the accused products described elsewhere in the complaint, as opposed to in the defendant's other products. *Id.* at *4. The complaint also failed to allege that the products were imported into the United States. *Id.* at *5. None of that is true here. IPValue has expressly alleged that the infringing methods described in the paper are used in the accused products, and that the accused products are sold in the United States.