KEKER, VAN NEST & PETERS LLP
AJAY S. KRISHNAN - # 222476
akrishnan@keker.com
RYAN K. WONG - # 267189
rwong@keker.com
ERIN E. MEYER - # 274244
emeyer@keker.com
ERIC HANSON - # 254570
ehanson@keker.com
STEPHANIE J. GOLDBERG - # 328710
sgoldberg@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Plaintiff SANDISK CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDISK CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>IPVALUE MANAGEMENT, INC. and LONGITUDE FLASH MEMORY SOLUTIONS, LTD.,<br><br>Defendants. | Case No. 5:25-CV-02389-PCP<br><br>**[PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS**<br><br>Date Filed:  March 7, 2025<br><br>Trial Date:  Not set |

[PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION AND HARD-COPY DOCUMENTS
Case No. 5:25-CV-02389-PCP

2970053

Unless otherwise agreed in a writing signed by the parties' counsel of record in this action, this Stipulation Regarding Electronic Discovery and Document Production Format ("Stipulation") shall govern the parties' discovery related to electronically stored information ("ESI")—as that term is used in Rule 34(a) of the Federal Rules of Civil Procedure—as well as the form of production of hard copy and source code documents.  The discovery activities covered by this Stipulation are to be conducted as follows:

## I.  GENERAL PROVISIONS

A.  This Stipulation supplements all other discovery rules and orders.  It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Rule 1 of the Federal Rules of Civil Procedure.

B.  This Stipulation may be modified for good cause.  The parties may agree to modifications, and if so agreed to, shall jointly submit any modifications to the Court.  If the parties cannot reach an agreement regarding proposed modifications, the parties shall submit their competing proposals and a summary of their dispute to the Court.

C.  Pursuant to Rule 26 of the Federal Rules of Civil Procedure, costs will be shifted for disproportionate ESI production requests.  In addition,

1.  A party's nonresponsive or dilatory discovery tactics will be considered in cost-shifting determinations.

2.  A party's good faith compliance with this Stipulation and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

D.  The parties have agreed that all electronic materials produced in this action will be exchanged electronically via secure FTP or on flash drive or hard drive.  To the

[PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION
AND HARD-COPY DOCUMENTS
Case No. 5:25-CV-02389-PCP

extent the documents are ordinarily maintained by the producing party in a form

that is electronically searchable, they must be produced in a form that is

electronically searchable.

E.  Nothing in this order or any other document relating to discovery in this matter

shall be construed or interpreted as precluding a producing party from performing

a responsiveness review to determine if documents captured by search terms are in

fact responsive to the requesting party's request.  Further, nothing in this order or

any other document relating to discovery in this matter shall be construed or

interpreted as requiring the production of all documents captured by any search

term if that document is – in good faith - deemed not responsive to the requesting

party's request for production by the producing party.

## II.  PRODUCTION OF HARD COPY DOCUMENTS

A.  **PRODUCTION FORMAT.**  The format of productions of hard copy documents shall

comply with the following requirements:

1.  **IMAGE FORMAT.**  Documents that exist in hard copy format only shall be scanned

and produced as single page black and white Group IV TIFFs, created with a

resolution of at least 300 dots per inch (dpi).  Color documents may be produced in

.JPG format in lieu of TIFF images; where so produced, color JPG files should also be

provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be

branded with sequential production numbers and appropriate confidentiality

designations.  Each TIFF or JPG image filename shall correspond to the Bates number

associated with that page.  TIFF or JPG files shall show all text and images that would

be visible to a user of the hard copy documents.

2. **DATABASE LOAD FILES/CROSS-REFERENCE FILES**. A production shall be provided with (a) a delimited data file (.dat) using Relativity default delimiters, and (b) an Opticon (Relativity Image) image load file (.opt) that can be loaded into Relativity. In addition:

    a. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

    b. The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF or JPG in a production must be referenced in the corresponding image load file.

    c. In addition to the metadata fields identified for production in II(A)(4) below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

3. **OCR TEXT FILES.** A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents. The filename for the multi-page text file described above in II(A)(2)(c) shall correspond to the beginning production number of the document. If a document is redacted, the text files shall not contain the redacted portions of the documents, but should contain the remaining unredacted text.

4. **METADATA.** The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) CUSTODIAN, and (d) CONFIDENTIALITY.

5. **UNITIZING OF DOCUMENTS.**  In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).  The parties will use reasonable efforts to unitize documents correctly to avoid producing large numbers of documents in single "clumps".

## III. PROCESSING STANDARDS AND PRODUCTION FORMATTING FOR ALL ELECTRONICALLY STORED INFORMATION (ESI)

A. **CULLING\FILTERING.**  Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process.  Hash values that may be filtered out during this process are located in the National Software Reference Library ("NRSL") NIST hash set list.  Additional culling of system file types based on file extension may include, but are not limited to:  WINNT, LOGS, DRVS, MP3, Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Hypertext Cascading Style Sheet (css), JavaScript Source Code (js), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows Media Player Skin Package (wmz), Windows NT/2000 Event View Log file (evt), Python Script files (.pyc, .pud, .pyw), and Program Installers.

B. **DEDUPLICATION.**  Each producing party shall de-duplicate ESI on a global level (across all custodians) prior to production.  The basis for such de-duplication shall be the MD5 or SHA1 Hash values, or some other later agreed to de-duplication method such as full text de-duplication.  For generating either the MD5 or SHA1 hash values for email, the parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation.  The custodians of deduplicated copies of documents should be included in the database load file, either in the CUSTODIAN field or, alternatively, in a field for duplicative or other custodians (e.g. DUPE CUSTODIAN).

4

C.  **STRUCTURED DATA.**  The parties shall meet and confer with respect to structured data sources that contain relevant information to determine what information the reports should contain.  As a general rule, data that is stored in a database, whether maintained internally by the party or through a third party provider, shall be produced as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format.

D.  **BACKUP DATA.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

E.  **MESSAGING & CHATS.**  Absent a showing of good cause, Messaging and/or Chats from programs like Slack and Teams are deemed not reasonably accessible and need not be collected or preserved.

F.  **MOBILE DEVICES.**  Absent a showing of good cause, data from personal mobile devices (e.g. owned by the individual employee and not in the care, custody or control of the party) are deemed not reasonably accessible and need not be collected or preserved.

G.  **PRODUCTION FORMAT FOR ESI.** The format of productions of ESI shall comply with the below listed requirements:

1.  **IMAGE FORMAT.**  All documents covered by Sec. III of this stipulation shall be produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi), unless so excepted by Sec. III(F)(4).  Color documents may be produced in .JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations.  Each TIFF or JPG image filename shall correspond to

the Bates number associated with that page. TIFF or jpg files shall show all text and images that would be visible to a user of the ESI documents.

a) **PRESENTATIONS.** The parties shall take reasonable efforts to process presentations (*e.g.*, PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF of jpg image.

2. **DATABASE LOAD FILES/CROSS-REFERENCE FILES.** A production should be provided with (a) a delimited data file (.dat) using Relativity default delimiters, and (b) an Opticon (Relativity Image) image load file (.opt) that can be loaded into Relativity.

a) The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

b) The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF in a production must be referenced in the corresponding image load file.

c) In addition to the metadata fields identified for production in Appendix 1 below, each .dat file shall include links to multi-page (document level) text files ("Text Path").

3. **TEXT FILES.** The multi-page text files described above in III(F)(2)(c) shall include text extracted from ESI with extractable text. For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the producing party shall use optical character recognition

software (OCR) to generate text for the document.  OCR generated text shall be provided for all documents without extractable text in the original native file unless the document is handwritten notes, drawings or is otherwise not easily convertible into a searchable format.  The filename for the multi-page text file shall correspond to the beginning production number of the document.

4. **NATIVE FILES.**  Any file produced in native format should be produced with a link in the NativeLink field, along with extracted full text and applicable metadata fields set forth in Appendix 1.  Any file produced in native format should be named to match the beginning Bates number of their corresponding entries in the database load files. Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format.  Only the files discussed below may be produced in native format unless both parties agree otherwise in writing.

a)    **SPREADSHEETS.**  Except for the placeholder referenced in III(F)(4) above, TIFF or JPG images of spreadsheets should not be produced unless redacted.  Where produced in TIFF or JPG format, the parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF or JPG images are formatted so as to be readable.

b)    **VIDEO AND AUDIO FILES.**  Audio and Video files shall be produced in native format, with TIFF placeholders and available metadata provided in database load files.

c)    **EXCEPTIONS.**  For any processing exception (i.e. a file that cannot be processed by standard ESI processing tools) that is being produced due to document family relationships, the producing party

shall provide a placeholder image, a Bates number and a confidentiality designation, in addition to associated metadata.

   d)    **REQUEST(S) FOR ADDITIONAL NATIVE FILES.**  If good cause exists to request production of specified files, other than those specifically set forth above, in native format, the requesting party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder.  Any dispute regarding the production of documents in native format shall be resolved by the assigned magistrate judge, as set forth in the Standing Order for the Northern District of California, San Jose Division.

5.   **METADATA FIELDS AND PROCESSING.**  Each of the metadata and coding fields set forth in Appendix 1 that can be extracted shall be produced for each document.  The parties are not obligated to populate manually any of the fields in Appendix 1 if such fields cannot be extracted from a document, with the exception of the following:  (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH; (e) CUSTODIAN; and (f) CONFIDENTIALITY, which should be populated by the party or the party's vendor.  Additionally, the parties agree to use reasonable methods of collection to minimize any alteration of metadata, but acknowledge and agree that changes to metadata can occur in the collection and production process (e.g., changes to Last Accessed Date Time, File Path, File Author, etc.) depending on how and where a document is stored in the ordinary course of business.  If the metadata of a document is missing or has been altered, and such

metadata is relevant to a disputed issue in the case and the parties cannot agree on or stipulate to the value such metadata, the producing party shall investigate the metadata of the original document and, if such information exists, provide that information to the requesting party. Such requests must be made in good-faith and limited only to specific documents where such metadata is relevant.

H. **FORMAT & FOLDER STRUCTURE.** The production data may be exchanged between counsel in encrypted form (*e.g.* TrueCrypt, password-protected Zip, or RAR files). Productions of 10GB or less may be made via FTP or secure server; larger productions should be made on hard media (e.g., hard drives). Each production shall be provided in the following folder structure:

1. Top-level folder: This folder will indicate the production volume;

2. Sub-folders:

   a) IMAGES: This folder will contain multiple sub-folders with ONLY TIFF (or .jpg) files in them. No other type of file should reside in the "IMAGES" folder. Sub-folders shall not contain more than 1000 images per folder.

   b) TEXT: This folder will contain the full text files in UNICODE, UTF8 or ANSI format in a separate folder labeled TEXT. Sub-folders shall not contain more than 1000 text files per folder.

   c) DATA: This folder will contain load files compatible with Relativity or above and Opticon.

   d) NATIVES: This folder will contain native files that the parties agree to produce during the course of this litigation. Sub-folders shall not contain more than 1000 native files per folder.

9

## IV. CUSTODIAL ESI

A. **DEFINITION AND GENERAL REQUIREMENTS.** For purposes of this stipulation, Custodial ESI refers to ESI associated with a particular individual, such as an individual's corporate email account or loose ESI stored in the individual's assigned corporate computer or individual cloud-based storage. Custodial ESI does not include information stored in a repository not associated with a particular individual, such as a shared drive, document storage system, or wiki. For the avoidance of doubt, the fact that a document was originally shared, sent, or received as an attachment to an e-mail or other electronic communication medium does not mean that document is Custodial ESI if the document is subsequently saved or stored on a shared drive, document storage system, wiki, or other corporate data storage system.

B. **AGREEMENT TO FOREGOE CUSTODIAL ESI SEARCH TERM PROCESS.** The parties agree that in light of the claims and defenses in this action, the minimal potential relevance of Custodial ESI is outweighed by the burden of searching, collecting, and reviewing Custodial ESI pursuant to a search-term process. Accordingly, the parties agree to forego a process in which a set of custodians are identified, and search terms are applied to their Custodial ESI. To the extent a specific discovery request appears to call for Custodial ESI, such as specific email communications or documents that may exclusively reside within a custodian's individual corporate accounts or devices, the parties agree to meet and confer about the relevance, scope, and feasibility of responding to such requests, subject to, and reserving all rights to maintain, the opposing party's general and specific objections to any such request.

## V. PRIVILEGE LOGS

A. For all documents withheld on the basis of privilege, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

1. A unique number for each entry on the log.

2. The date of document. For emails this should be the sent date of the document and for loose ESI this should be the last-modified or create date of the document.

3. The Author of the document. For emails this should be populated with the metadata extracted from the "Email From" field associated with the file. For loose ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

4. Recipient(s) of the document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

5. A description of the nature of the document per Rule 26(b)(5)(ii). This description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

6. The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

B. The parties shall identify on their logs where counsel is present in conversation, specifically for columns A(3) and A(4) noted above. Where counsel creating the privilege is not readily ascertainable from columns A(3) and A(4) above, the parties shall include a reference to counsel in the privilege description field described in A(5) above.

11

C. Privilege logs shall be produced at least 30 days prior to the close of fact discovery.

D. **EXCEPTION TO LOGGING.** Communications involving inside or outside counsel for the parties related to this case or any of the other Related Cases described in the Joint Case Management Statement, and materials withheld from discovery on grounds of privilege, work product or similar doctrines, that were created on or after January 22, 2025 need not be included in the parties' privilege log(s) as a matter of course. These exceptions are made without prejudice to any party's ability and right to assert that such materials are discoverable and not privileged or protected. These exceptions also do not apply to the redacted documents and their respective redaction log(s).

## VI. REDACTION LOGS

For redacted documents, the Parties agree to use redaction text that indicates the nature of the redaction (e.g. Redacted – Privileged, Redacted – PII) and not to redact headers and footers except where such redaction is required to preserve the privilege. If the receiving party, in good faith, requests additional information about why a particular document or documents is redacted, the producing party shall provide a Redaction Log that meets the requirements articulated below.

For each document that is redacted, in addition to providing the redacted version of the document, the parties agree to furnish logs which comply with the legal requirements under Federal Law, but at a minimum will include the following information:

1. The Begin Production ID of the document.

2. The End Production ID of the document.

3. A description of the nature of the redacted material per Rule 26(b)(5)(ii).

4. If the document was redacted for privilege concerns, the type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

Redaction logs shall be produced at least 30 days prior to the close of fact discovery.

## VII.     INADVERTENT PRODUCTION OF PRIVILEGED INFORMATION.

Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected data is not a waiver in the pending case or in any other federal or state proceeding.  The receiving party shall not use produced data that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.  The mere production of privileged information in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

In addition, the inadvertent production of any privileged document, information or thing shall not be deemed a waiver of such privilege or otherwise affect the producing party's right to seek return of the inadvertently produced document, information, or thing.  The party receiving the document(s) that appears to be privileged shall promptly notify the producing party upon becoming aware that the document(s) may have been inadvertently produced and in any event, before making use of said document.

In the event that documents which are claimed to be privileged or subject to the work-product doctrine are inadvertently produced, such documents shall be returned by the receiving party within two (2) calendar days of any written request therefor.  The receiving party shall return all copies of the inadvertently produced document(s) and not retain any copies, notes, or summaries of said documents.  If the receiving party seeks to challenge the privileged nature of the document(s), the receiving party must still return the document(s) to the producing party but may then seek re-production of the document(s).

It is the desire, intention and mutual understanding of the parties that all inadvertently or unintentionally disclosed or produced privileged information shall be treated as confidential and may not be disclosed by the receiving party to persons or entities other than the producing party without the written consent of the producing party.

If a party who received documents or information over which a privilege is asserted has disclosed such documents or information to any person or in any circumstance, the party must

13

immediately:  (a) notify, in writing, the producing party of the disclosure; (b) use best efforts to retrieve all copies of the documents or information over which the privilege is asserted; and (c) notify, in writing, the producing party regarding whether all copies have been retrieved.

The parties further agree that no motion to compel or other argument for waiver of privilege will be raised based upon the inadvertent or unintentional production or disclosure of privileged information.

Nothing herein shall prevent the receiving party from challenging the propriety of the claim of attorney client privilege, work product protections or other applicable privilege or immunity designation by submitting a written challenge to the court.

## VIII.   COMMUNICATIONS WITH EXPERTS

Drafts of reports, declarations, or affidavits prepared by an expert who may give testimony in this case ("Testifying Expert"), or his or her assistants, as part of the Testifying Expert's investigation and/or in developing the Testifying Expert's opinions and reports shall not be subject to discovery.  This limitation applies regardless of whether such draft reports have been disclosed, or otherwise transmitted to, or contain any notes, writing, or markings created by in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert.

Notes and other documents prepared by a Testifying Expert, or his or her assistants, as part of the investigation and/or in preparing an expert report shall not be subject to discovery.

Discovery of materials provided to Testifying Experts is limited to those materials, facts, consulting expert opinions, and other matters actually relied upon by the Testifying Expert in formulating his/her final report(s), or trial or deposition testimony.

No discovery may be taken from any consulting expert that will not provide testimony and/or an expert opinion in this case ("Consulting Expert"), including with respect to drafts of reports, if any, prepared by an expert except to the extent that the Consulting Expert has provided information, opinions, or other materials that a Testifying Expert relied on in formulating his/her final report(s), or trial or deposition testimony.  Where a Consulting Expert has provided

14

materials or information that a Testifying Expert has relied on in formulating his/her final report(s), trial or deposition testimony, or any opinion, discovery (other than depositions) may be taken of the Consulting Expert regarding those specific materials and information.  The limitations herein do not preclude a party from discovery of prior opinions or testimony of an expert in matters other than the above-captioned matter, to the extent the prior opinions or testimony are related to and/or may be inconsistent with the opinions given in the above-captioned matter.

Written or oral communications between any Testifying Expert or Consulting Expert, his or her assistants, and/or in-house counsel or outside counsel, or employees of or consultants for the party or parties who engaged such Testifying Expert or Consulting Expert, are not subject to discovery unless the conversations or communications are relied upon by a Testifying Expert in formulating his/her final report(s), trial or deposition testimony, or any opinion in the above-captioned matter.

Notwithstanding the foregoing, expert reports must disclose all documents and things considered or relied upon by the expert with reference to this case, including definitions and any documents or things provided by counsel or by the expert's staff, although communications forwarding or otherwise concerning such source documents or things are not discoverable.

## IX. MISCELLANEOUS

This Stipulation is entered into without prejudice to the right of any party to apply to the Court at any time for modification of this Stipulation.  Furthermore, without application to this Court, the parties may agree in a signed writing to modify the terms of this Stipulation.


IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.


Dated:  November 10, 2025                          KEKER, VAN NEST & PETERS LLP


By:   _/s/ Natalie R. Heim_

15

AJAY S. KRISHNAN
RYAN K. WONG
ERIN E. MEYER
ERIC HANSON
STEPHANIE J. GOLDBERG

Attorneys for Plaintiff SANDISK
CORPORATION

Dated: November 10, 2025                    RUSS, AUGUST & KABAT


By:    */s/ Mackenzie Paladino*
BRIAN D. LEDAHL
NEIL A. RUBIN
MACKENZIE PALADINO

Attorneys for Defendants
IPVALUE MANAGEMENT, INC. and
LONGITUDE FLASH MEMORY
SOLUTIONS LTD.


PURSUANT TO STIPULATION, IT IS SO ORDERED.


DATED: _____    _____
HONORABLE P. CASEY PITTS
United States District Judge

1

**ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1**

2

Pursuant to Civil Local Rule 5-1(i)(3) of the Northern District of California, I attest that

3

concurrence in the filing of the document has been obtained from each of the other signatories to

4

this document.

5

Dated:  November 10, 2025

6

/s/ Natalie R. Heim

7

Natalie R. Heim

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION
AND HARD-COPY DOCUMENTS
Case No. 5:25-CV-02389-PCP

**Appendix 1:  ESI Metadata and Coding Fields**

A.     **Imagebase Load File (.opt) shall be in Relativity Image/Opticon (.opt) format and include a record for each page with the following fields:**
ALIAS, VOLUME, PATH, DOC_BREAK, FOLDER_BREAK, BOX_BREAK, PAGES

B.     **Metadata Load File (.dat)** shall include a record for each document and use Relativity default delimiters, as follow:

Field Delimiter     =   (ASCII 020)

Text Delimiter      =   þ (ASCII 254)

Line Delimiter      =   ® (ASCII 174)

C.     The following fields will appear in the metadata load file in the order displayed below[1]:

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| BegBates | Production number of the first page of the document. | All | Prefix-00000001 or Prefix_00000001_0001 |
| EndBates | Production number of the last page of the document. | All | Prefix-00000002 or Prefix_00000001_0002 |
| BegAttach | Production number of the first page of the first document of the document family. | All | Prefix-00000001 or Prefix_00000001_0001 |
| EndAttach | Production number of the last page of the last document of the document family. | All | Prefix-00000004 or Prefix_00000004_0003 |
| Page Count | Number of pages in document as produced in imaged format | All | 1 |
| Document Type | Whether a document is an email message, an email attachment, or a loose electronic file | All | Email, Eattach, Edoc |

---

[1] The listing of email metadata fields herein does not alter the parties' agreement in Sec. IV(2) with respect to Custodial ESI.

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Parent Attachment | P(arent) or A(ttachment) | All | P or A |
| Custodian | Custodian of the document being produced. | All | Last name, First name OR Firstname Lastname |
| Custodians All | Custodians who had a copy of the document being produced. | All (where custodial information is available) | Last name, First name OR Firstname Lastname |
| From | The name and e-mail address of the sender of the e-mail. | E-mails | Firstname.Lastname@ domain.com OR Firstname Lastname <Firstname.Lastname@domain.com> |
| To | All recipients that were included on the "To" line of the e-mail. | E-mails | Firstname.Lastname@ domain.com OR Firstname Lastname <Firstname.Lastname@domain.com> |
| CC | All recipients that were included on the "CC" line of the e-mail. | E-mails | Firstname.Lastname@ domain.com OR Firstname Lastname <Firstname.Lastname@domain.com> |
| BCC | All recipients that were included on the "BCC" line of the e-mail. | E-mails | Firstname.Lastname@ domain.com OR Firstname Lastname <Firstname.Lastname@domain.com> |
| Subject | Document subject line of an e-mail. | E-mails | |
| Email Conversation Index | Email conversation identifier | E-mails | |
| Date Time Sent | Date and time an e-mail was sent. | E-mails | mm/dd/yyyy hh:mm:ss |
| Date Time Received | Date and time an e-mail was received. | E-mails | mm/dd/yyyy hh:mm:ss |
| Time Zone | If not included in the above, the time zone in which the emails were standardized during conversion | E-mails | |
| MD5 Hash | The MD5 hash value of the document. | All | |
| File Name | The file name of the document. | E-attachments; Electronic Documents | |

19

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Source File Path | Path to file or message | E-mails, E-attachments and electronic documents | \Desktop\ ... |
| File Extension | The file extension of a document. | E-attachments; Electronic Documents | docx |
| File Type | Type of electronic file | All | Microsoft Word Document, QuickTime Movie, Outlook Email Message, etc |
| File Size | Size of file | All | 1245 |
| Author | Author of document | E-attachments; electronic documents | |
| Last_Author | Last author of document | E-attachments; electronic documents | |
| Title | Title of document as found in document profile metadata | E-attachments; electronic documents | |
| Date Time Created | The date and time an e-mail or e-file was created. | E-mails, E-attachments and electronic documents | mm/dd/yyyy hh:mm:ss |
| Date Time Modified | Date and time the document was last modified. | E-attachments; Electronic documents | mm/dd/yyyy hh:mm:ss |
| Date Time Printed | The date and time the document was last printed | All | mm/dd/yyyy hh:mm:ss |
| Date Time Accessed | The date and time the document was last viewed | All | mm/dd/yyyy hh:mm:ss |
| Confidentiality | The confidentiality designation of the file as stamped on the images. | All (that receive confidentiality designation) | Confidential |
| Native Link | The full path to a native copy of a document, if one has been produced. | E-attachments; Electronic Documents | \natives\001\ABC0000001.htm |

| Field Name | Field Description | Populated For | Example Values |
|---|---|---|---|
| Text Link | The path to the full extracted or OCR text of the document. | All | \TEXT\ABC000001.txt |
| Production Volume | The production media deliverable. | All | |

[PROPOSED] ORDER GOVERNING THE PRODUCTION OF ELECTRONICALLY STORED INFORMATION
AND HARD-COPY DOCUMENTS
Case No. 5:25-CV-02389-PCP